**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHER DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE PILL CLUB PHARMACY HOLDINGS, LLC, *et al.*, [1] | ) Case No.  23-41090 (ELM) |
| | ) |
| Debtors | ) (Jointly Administered) |

**JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR DEBTORS HEY FAVOR, INC., THE PILL CLUB PHARMACY HOLDINGS, LLC, MEDPRO PHARMACY, LLC, MOBIMEDS, INC., FVR MEDICAL GROUP, INC., FVR MEDICAL GROUP OF NEW JERSEY, PC, FVR MEDICAL GROUP OF KANSAS, PA, AND FVR MEDICAL GROUP OF TEXAS, PA**

---

THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1126.  THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE DEBTORS' FILING FOR CHAPTER 11 BANKRUPTCY.

---

Katherine A. Preston (State Bar No. 24088255)
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, Texas 77002
T: (713) 651-2600
kpreston@winston.com

Timothy W. Walsh (admitted *pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166-4193
T: (212) 294-6700
twwalsh@winston.com

Daniel J. McGuire (admitted *pro hac vice*)
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, Illinois 60601-9703
T: (312) 558-5600
dmcguire@winston.com

*Counsel to the Debtors and Debtors in Possession*

Dated: January 25, 2024

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Hey Favor, Inc.  (3206), The Pill Club Pharmacy Holdings, LLC (0112), MedPro Pharmacy, LLC (1138), MobiMeds, Inc.  (3165), FVR Medical Group, Inc.  (6320), FVR Medical Group of New Jersey, PC (2934), FVR Medical Group of Kansas, PA (5449), and FVR Medical Group of Texas, PA (6479).   The service address for the Debtors is:  P.O. Box 471930, San Francisco, CA 94124.

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ........................................................................................................................ 1

**In re:** .........................................................................................................................................1

**Debtors** .....................................................................................................................................1

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION,  COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES** ...........................................................5
    A.    Defined Terms ...............................................................................................5
    B.    Rules of Interpretation ..................................................................................15
    C.    Computation of Time .....................................................................................16
    D.    Governing Law .............................................................................................16
    E.    Reference to Monetary Figures .....................................................................16
    F.    Controlling Document ...................................................................................16

**ARTICLE II ADMINISTRATIVE AND PRIORITY TAX CLAIMS** ...........................................17
    A.    Administrative Claims ....................................................................................17
    B.    Professional Claims ......................................................................................17
    C.    Priority Tax Claims .......................................................................................18

**ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS** ......18
    A.    Classification of Claims and Interests ...........................................................18
    B.    Identification of Classes: ...............................................................................19
    C.    Treatment of Classes of Claims and Interests ...............................................21
    D.    Special Provision Governing Unimpaired Claims ..........................................23
    E.    Elimination of Vacant Classes .......................................................................23
    F.    Voting Classes; Presumed Acceptance by Non-Voting Classes ...................23
    G.    Subordinated Claims ....................................................................................23
    H.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ..............23

**ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN** ......................................24
    A.    General Settlement of Claims and Interests ...................................................24
    B.    Sources of Consideration for Plan Distributions ...........................................24
    C.    Liquidating Trustee .......................................................................................24
    D.    Corporate Existence ......................................................................................25
    E.    Release of Liens ...........................................................................................26
    F.    Cancellation of Notes, Instruments, Certificates, and Other Documents ......26
    G.    Section 1146(a) Exemption ..........................................................................26
    H.    Effectuating Documents; Further Transactions .............................................26
    I.    Preservation of Causes of Action ..................................................................27
    J.    Approval of the NOL Sale ..............................................................................27
    K.    Closing of Chapter 11 Cases .........................................................................27

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............27
    A.    Rejection of Executory Contracts and Unexpired Leases .............................27
    B.    Rejection Claims ...........................................................................................28
    C.    Indemnification .............................................................................................28
    D.    Modifications, Amendments, Supplements, Restatements, or Other Agreements ....................28
    E.    Insurance Policies .........................................................................................29
    F.    Reservation of Rights ....................................................................................29

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** .....................................................29
    A.    Distributions on Account of Claims and Interests Allowed as of the Effective Date ...............29
    B.    Distributions on Account of Claims Allowed After the Effective Date .....................29

C.   Special Rules for Distributions to Holders of Disputed Claims ...................................30
D.   Delivery of Distributions.............................................................................................30
E.   Claims Paid or Payable by Third Parties ....................................................................32
F.   Allocation Between Principal and Accrued Interest....................................................33

**ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS.......................................33**
A.   Disputed Claims Process.............................................................................................33
B.   Objections to Claims...................................................................................................33
C.   Estimation of Claims...................................................................................................33
D.   No Distributions Pending Allowance .........................................................................34
E.   Resolution of Claims...................................................................................................34
F.   Amendments to Claims ...............................................................................................34
G.   Adjustment to Claims Without Objection ..................................................................34
H.   No Interest ...................................................................................................................35
I.   Single Satisfaction of Claims .....................................................................................35
J.   Disallowance of Claims and Interests ........................................................................35

**ARTICLE VIII EFFECT OF CONFIRMATION OF THE PLAN .............................................36**
A.   Binding Effect .............................................................................................................36
B.   Releases by the Debtors ..............................................................................................36
C.   Releases by Holders of Claims and Interests..............................................................37
D.   Exculpation .................................................................................................................37
E.   Injunction ....................................................................................................................38
F.   Protection Against Discriminatory Treatment............................................................38
G.   Recoupment .................................................................................................................39
H.   Reimbursement or Contribution .................................................................................39
I.   Releases and Setoff- Certain Governmental Unit Specific Provisions.......................39

**ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ...............................40**
A.   Conditions Precedent to the Effective Date................................................................40
B.   Waiver of Conditions Precedent..................................................................................41
C.   Effect of Non-Occurrence of Conditions to Consummation ......................................41

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .........41**
A.   Modification of Plan....................................................................................................41
B.   Effect of Confirmation on Modifications ...................................................................41
C.   Withdrawal of Plan......................................................................................................41

**ARTICLE XI RETENTION OF JURISDICTION..............................................................42**

**ARTICLE XII MISCELLANEOUS PROVISIONS...........................................................43**
A.   Immediate Binding Effect ...........................................................................................43
B.   Additional Documents.................................................................................................44
C.   Payment of Statutory Fees..........................................................................................44
D.   Reservation of Rights ..................................................................................................44
E.   Successors and Assigns ...............................................................................................44
F.   Service of Documents ..................................................................................................44
G.   Term of Injunctions or Stays ......................................................................................45
H.   Entire Agreement ........................................................................................................46
I.   Plan Supplement Exhibits............................................................................................46
J.   Non-Severability ..........................................................................................................46
K.   Votes Solicited in Good Faith .....................................................................................46
L.   Dissolution of Creditors' Committee ..........................................................................46
M.   Waiver or Estoppel......................................................................................................47

## INTRODUCTION

Hey Favor, Inc., The Pill Club Pharmacy Holdings, LLC, MedPro Pharmacy, LLC, MobiMeds, Inc., FVR Medical Group, Inc., FVR Medical Group of New Jersey, PC, FVR Medical Group of Kansas, PA, FVR Medical Group of Texas, PA (together, collectively, the "Debtors" and each a "Debtor"), hereby propose the Chapter 11 Plan of Liquidation for the Debtors (the "Plan"). Capitalized terms used in the Plan shall have the meanings set forth in Article I.A of the Plan.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each of the Debtors, for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. **Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors.**

Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan, and certain related matters.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, PARTICULARLY HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

### A.    Defined Terms

1.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtors' Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating or liquidating the Debtors' businesses; (b) Allowed Professional Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2.    "*Administrative Claims Bar Date*" means the date by which parties seeking to assert Administrative Claims against the Debtors must file proof of such Administrative Claims, which is (a) July 17, 2023, at 5:00 p.m. (prevailing Central Time) for all Administrative Claims against the Debtors arising on or prior to the Petition Date, (b) for all claims arising after the Petition Date, the 15th day of the month following the month in which the claim arose.

3.      "*Affiliate*" has the meaning set forth in Rule 12b-2 of the General Rules and Regulations under the Securities Exchange Act of 1934, as amended.

4.      "*Allowed*" means with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); or (b) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided, that with respect to a Claim described in clause (a) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order.  Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.  For the avoidance of doubt: (x) a Proof of Claim Filed after the Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.   "Allow" and "Allowing" shall have correlative meanings.

5.      "*Asserted Caremark Admin Claim*" means the disputed Administrative Claim asserted by Caremark, LLC and Caremark PCS, LLC as detailed in the Application filed at Docket No. 402 in the Chapter 11 Cases.

6.      "*Asserted WARN Admin Claims*" means the disputed Administrative Claims asserted in the class action adversary proceeding filed in the Bankruptcy Court and styled as *Janell Sanford, on behalf of herself and all others similarly situated v. Hey Favor, Inc., The Pill Club Pharmacy Holdings, LLC, MedPro Pharmacy, LLC, MobiMeds, Inc., and FVR Medical Group, Inc.,* Adv, Pro. No. 23-04038.

7.      "*Available Cash*" means (a) all Cash of a Debtor realized from its business operations, the Liquidation Proceeds, the interest earned on its invested funds, recoveries from Causes of Action or from any other source or otherwise less (b) the amount of Cash (i) necessary to pay all fees payable under section 1930 of chapter 123 of title 28 of the United States Code and all holders of Allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, against such Debtor in accordance with the Plan, and (ii) an amount equal to $150,000 to be reserved from the Proceeds to fund the reasonable and necessary projected costs to carry out the provisions of the Plan with respect to the Debtors on and after the Effective Date, including to fund the wind-down of the Debtors' estates. To the extent any portion of the reserve is not used to pay the costs and fees described above, such excess shall be added back to the

calculation of Available Cash.

8.      "*Avoidance Action*" means any and all avoidance, recovery, subordination or other claim, action or remedy that may be brought by or on behalf of the Debtors or their Estates or other authorized parties-in-interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553 and 724(a) of the Bankruptcy Code or under similar local, state, federal or foreign statutes and common law, including fraudulent transfer laws.

9.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

10.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or such other court having jurisdiction over the Debtors' Chapter 11 Cases.

11.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Debtors' Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court.

12.    "*Bar Date*" means, as applicable, the Administrative Claims Bar Date, the Claims Bar Date, the Governmental Bar Date, and any other date or dates established or to be established by an order of the Court by which Proofs of Claim must be Filed.

13.    "*Business Day*" means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

14.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

15.    "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

16.    "*Certificate*" means any instrument evidencing a Claim or an Interest.

17.    "*Chapter 11 Cases*" means the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

18.    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

19.    "*Claims Bar Date*" means (a) as to any Proof of Claim filed by the holder of the Claim, July 17, 2023, at 5:00 p.m. (prevailing Central Time) as established by the Bankruptcy Court, (b) as to any Claim filed by any Debtor on behalf of the holder of a Claim pursuant to Bankruptcy Rule 3004, August 16, 2023, at 5:00 p.m. (prevailing Central Time), and (c) the Governmental Bar Date.

20.    "*Claims Register*" means the official register of Claims against and Interests in the Debtors maintained by the Debtors.

21.    "*Class*" means a category of holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

22.    "*Confirmation*" means entry of the Confirmation Order on the docket of the Debtors' Chapter 11 Cases.

23.    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Debtors' Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

24.    "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

25.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code and approving the Disclosure Statement, which order shall be in form and substance acceptable to the Debtors.

26.    "*Consummation*" means the occurrence of the Effective Date.

27.    "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

28.    "*Creditors' Committee*" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee.

29.    "*Creditors' Committee Professionals*" means Akerman LLP, Buchalter, a Professional Corporation, and GlassRatner Advisory & Capital Group, LLC dba B. Riley Advisory Services.

30.    "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtors' defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

31.      "*D&O Policies*" means all insurance policies (including any "tail policy") maintained by the Debtors as of the Petition Date for liabilities against any of the Debtors' current or former directors, managers, and officers.

32.      "*Debtor Professionals*" means Winston & Strawn, LLP, BMC Group, Inc., and Accordion Partners LLC.

33.      "*DIP Agent*" means TriplePoint Venture Growth BDC Corp., as collateral agent for the DIP Lenders.

34.      "*DIP Facility*" means that certain multiple draw non-amortizing senior secured term loan debtor-in-possession credit facility in the full amount of $5.5 million under the DIP Loan Agreement but only $2.409 million drawn.

35.      "*DIP Lenders*" means TriplePoint Venture Growth BDC Corp., TriplePoint Private Venture Credit Fund Inc., and TriplePoint Venture Lending Fund, LLC, as lenders party to the DIP Loan Agreement.

36.      "*DIP Loan Agreement*" means that certain debtor-in-possession term sheet by and among the Debtors, the DIP Agent, and the DIP Lenders as approved by the DIP Order.

37.      "*DIP Order*" means the final order entered by the Bankruptcy Court authorizing the Debtors to enter into the DIP Loan Agreement and access the DIP Facility.

38.      "*Director Payment*" means payments of $75,000 in the aggregate by certain of the Debtors' current directors as consideration for being included as Released Parties under the Plan.

39.      "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

40.      "*Disputed*" means, as to a Claim or an Interest, a Claim or an Interest: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

41.      "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors, on or after the Effective Date, upon which the Debtors shall make distributions to holders of Allowed Claims entitled to receive distributions under the Plan.

42.      "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan.

43.      "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

44.    "*Equity Interests*" means, collectively, the membership interests held by the members of the Debtors.

45.    "*Estates*" means the estates of the Debtors created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

46.    "*Exculpated Party*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) any official committees appointed in the Debtors' Chapter 11 Cases and each of their respective members; and (c) with respect to each of the foregoing in clauses (a) through (b), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

47.    "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

48.    "*File*" or "*Filed*" means file or filed with the Bankruptcy Court or its authorized designee in the Debtors' Chapter 11 Cases, or, with respect to the filing of a Proof of Claim or Proof of Interest, the Claims Agent.

49.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

50.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

51.    "*FVR Kansas*" means FVR Medical Group of Kansas, PA, a Kansas professional association, a debtor and debtor in possession.

52.    "*FVR Medical*" means FVR Medical Group, Inc., a California corporation, a debtor and debtor in possession.

53.    "*FVR New Jersey*" means FVR Medical Group of New Jersey, PC, a New Jersey professional corporation, a debtor and debtor in possession.

54.    "*FVR Texas*" means FVR Medical Group of Texas, PA, a Texas professional association, a debtor and debtor in possession.

55.    "*General Unsecured Claim*" means any Claim other than an Other Priority Claim, a Prepetition Lender Claim that is a Secured Claim, or a Section 510(b) Claim.

56. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

57. "*Hey Favor*" means Hey Favor, Inc., a Delaware corporation, a debtor and debtor in possession.

58. "*Holdings*" means The Pill Club Pharmacy Holdings, LLC, a Delaware limited liability company, a debtor and debtor in possession.

59. "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

60. "*Impaired Non-Voting Status Notice*" means either of the forms of notice attached as Exhibit 3 and Exhibit 4 to the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Approving the Solicitation Procedures and Dates, Deadlines, and Notices Related Thereto; and (III) Granting Related Relief* [Docket No. __], which will be sent to holder of Claims and Interests not entitled to vote under the Plan.

61. "*Indemnification Provisions*" means each of the Debtors' indemnification provisions currently in place whether in the Debtors' bylaws, limited liability company agreements, other formation documents, board resolutions, or contracts for the current and former directors, officers, managers, employees, attorneys, other professionals, and agents of the Debtors and such current and former directors', officers', and managers' respective Affiliates.

62. "*Interest*" means any membership interest in a Debtor and any other rights, options, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in a Debtor.

63. "*Initial Distribution*" means the first distribution that either the Debtors or the Liquidating Trustee, as applicable, makes to holders of Allowed Claims.

64. "*Initial Distribution Date*" means the date selected by the Debtors on or as soon as reasonably practicable after the Effective Date.

65. "*Intercompany Claim*" means a Claim against any Debtor by an Affiliate of such Debtor, which Affiliate may be another Debtor.

66. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

67. "*Liquidating Trustee*" means the Person(s) or entity named as such in the Plan Supplement.

68. "*Plan*" means this chapter 11 plan, including the Plan Supplement and all exhibits, supplements, appendices, and schedules, which plan shall be in form and substance acceptable to the Debtors.

69.     "*Liquidation Proceeds*" means the proceeds of the liquidation of the Debtors.

70.     "*MedPro*" means MedPro Pharmacy, LLC, a Texas limited liability company, a debtor and debtor in possession.

71.     "*MobiMeds*" means MobiMeds, Inc., a Delaware corporation, a debtor and debtor in possession.

72.     "*NOL Sale*" means the sale of the membership interests in Holdings, is name and related books and records pursuant to an Agreement of Purchase and Sale to be filed with the Plan Supplement.

73.     "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

74.     "*Other Secured Claim*" means any Secured Claim, including any Secured Tax Claim, other than a Prepetition Lender Claim.

75.     "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

76.     "*Petition Date*" means the date on which the Debtors' Chapter 11 Cases were commenced.

77.     "*Plan*" means this Plan.

78.     "*Plan Supplement*" means any compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan.

79.     "*Prepetition Agent*" means TriplePoint Venture Growth BDC Corp., a Maryland corporation, in its capacity as collateral agent for the Prepetition Lenders under the TriplePoint Loan Agreement.

80.     "*Prepetition Lenders*" means TriplePoint Venture Growth BDC Corp., TriplePoint Venture Lending Fund, LLC, and TriplePoint Private Venture Credit Inc.

81.     "*Prepetition Lender Claim*" means any Claim arising under, derived from, or based upon the Prepetition Loan Documents.

82.  "*Prepetition Loan Agreement*" means the Plain English Growth Capital Loan and Security Agreement dated as of December 31, 2021, by and between Hey Favor, certain other borrowers and guarantors from time to time party thereto, and TriplePoint Venture Growth BDC Corp., a Maryland corporation, in its capacities as collateral agent for the Prepetition Lenders and as a Prepetition Lender, and TriplePoint Venture Lending Fund, LLC and TriplePoint Private Venture Credit Inc., as lenders, as amended from time to time.

83.  "*Prepetition Loan Documents*" means the following documents among, *inter alia*, Hey Favor and TriplePoint Venture Growth BDC Corp., a Maryland corporation, in its capacity as collateral agent for the Prepetition Lenders, as such Prepetition TPC Documents have been amended from time to time:  (1) the Prepetition Loan Agreement; (2) Pledge Agreement dated as of December 31, 2021, by and between, *inter alia*, Hey Favor, Holdings, and the Prepetition Agent; and (3) each of the other "Loan Documents" (as defined in the Prepetition Loan Documents).

84.  "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

85.  "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

86.  "*Professional*" means an Entity: (a) employed in the Debtors' Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) ofthe Bankruptcy Code.

87.  "*Professional Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

88.  "*Professional Fee Amount*" means the aggregate amount of Professional Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in <u>Article II.C</u> of the Plan.

89.  "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in their Chapter 11 Case.

90.  "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

91.    "*Released Party*" means collectively: (a) Hey Favor; (b) Holdings; (c) MedPro; (d) MobiMeds; (e) FVR Medical; (f) FVR New Jersey; (g) FVR Kansas; (h) FVR Texas; (i) the holders of Hey Favor's Interests; and (j) with respect to the Debtors, and each of the foregoing entities in clauses (a) through (i), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; provided, however, that Released Party shall not include any former directors or officers who were not directors or officers as of or after the Petition Date.

92.    "*Releasing Parties*" means, collectively, (a) Hey Favor.; (b) Holdings; (c) MedPro; (d) MobiMeds.; (e) FVR Medical.; (f) FVR New Jersey; (g) FVR Kansas; (h) FVR Texas; (i) the holders of Hey Favor's Interests; (j) all holders of Claims or Interests who vote to accept the Plan or are deemed to have accepted the Plan; (k) all holders of Claims or Interests who abstain from voting on the Plan and who do not opt out of the releases provided by the Plan; (l) all holders of Claims or Interests who timely vote to reject the Plan and who, in their returned ballots, do not opt out of the releases provided by the Plan; (m) all holders of Claims or Interests who receive an Impaired Non-Voting Status Notice and who do not return such notice on or before the deadline stated in the notice indicating that they are opting out of the releases provided in such Impaired Non-Voting Status Notice; (n) all holders of Debtor Interests; (o) with respect to each Debtor, and each of the foregoing entities in clauses (a) through (n), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such collectively; and (n) all holders of Claims and Interests, solely with respect to releases of all holders of Hey Favor's Interests, and their current and former Affiliates, and such Entities' and their Affiliates' current and former equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and their current and former officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

93.    "*Sale Proceeds*" means all proceeds from the Sale Transactions.

94.    "*Sale Orders*" means those certain orders entered by the Bankruptcy Court authorizing and approving the sale of the Debtors' assets free and clear of all liens, claims, encumbrances, and interests; and granting related relief.

95.    "*Sale Transactions*" means the sale of substantially all of the Debtors' assets pursuant to

the Sale Orders.

96. "*Section 510(b) Claim*" means any Claim arising from: (a) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors; (b) purchase or sale of such a security; or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

97. "*Secured Claim*" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

98. "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

99. "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim to a holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

100. "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

101. "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

102. "*U.S. Trustee*" means the Office of the United States Trustee for the Northern District of Texas.

## B.   Rules of Interpretation

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in

its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Debtors' Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (l) any immaterial effectuating provisions may be interpreted by the Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**C.     Computation of Time**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**D.     Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors, as applicable, shall be governed by the laws of the relevant state of formation of the relevant Debtor, as applicable.

**E.     Reference to Monetary Figures**

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

**F.     Controlling Document**

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

# ARTICLE II

## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

## A.   **Administrative Claims**

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and a Debtor or the Liquidating Trustee, each holder of an Allowed Administrative Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such holder and the Debtor; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except as otherwise provided in this Article II.A and except with respect to Professional Claims, requests for payment of Administrative Claims must be Filed and served on the Debtors and Liquidating Trustee no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

## B.   **Professional Claims**

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Liquidating Trustee shall pay Professional Claims in Cash in the amount the Bankruptcy Court allows. Professionals shall deliver to the Debtors their estimates for purposes of the Liquidating Trustee computing the Professional Fee Amount no later than five Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such

estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims filed with the Bankruptcy Court. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Trustee may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

## C.    <u>Priority Tax Claims</u>

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange  for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III

## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

## A.    <u>Classification of Claims and Interests</u>

Except for the Claims addressed in <u>Article II</u> of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Intercompany claims | Impaired | Entitled to Vote |
| 5 | Equity Interests | Impaired | Deemed to Reject |

**B.**    **Identification of Classes:**

1.  Class 1 – Other Secured Claims: Class 1 shall consist of all Other Secured Claims. Each Allowed Claim in this class is assigned to a separate subclass.

2.  Class 2 – Allowed Priority Non-Tax Claims: Class 2 consists of eight subclasses, Class 2A, Class 2B, Class 2C, Class 2D, Class 2E, Class 2F, Class 2G, and Class 2H.

    (a)  Class 2A – Hey Favor Allowed Priority Non-Tax Claims: Class 2A consists of all Allowed Priority Non-Tax Claims against Hey Favor.

    (b)  Class 2B – Holdings Allowed Priority Non-Tax Claims: Class 2B consists of all Allowed Priority Non-Tax Claims against Holdings.

    (c)  Class 2C – FVR Kansas Allowed Priority Non-Tax Claims: Class 2C consists of all Allowed Priority Non-Tax Claims against FVR Kansas.

    (d)  Class 2D – FVR Medical Allowed Priority Non-Tax Claims: Class 2D consists of all Allowed Priority Non-Tax Claims against FVR Medical.

    (e)  Class 2E – FVR New Jersey Allowed Priority Non-Tax Claims: Class 2E consists of all Allowed Priority Non-Tax Claims against FVR New Jersey.

    (f)  Class 2F – FVR Texas Allowed Priority Non-Tax Claims: Class 2F consists of all Allowed Priority Non-Tax Claims against FVR Texas.

    (g)  Class 2G – MedPro Allowed Priority Non-Tax Claims: Class 2G consists of all Allowed Priority Non-Tax Claims against MedPro.

    (h)  Class 2H – MobiMeds Allowed Priority Non-Tax Claims: Class 2H consists of all Allowed Priority Non-Tax Claims against MobiMeds.

3.  Class 3 – Allowed General Unsecured Claims: Class 4 consists of eight subclasses, Class 3A, Class 3B, Class 3C, Class 3D, Class 3E, Class 3F, Class 3G, and Class 3H.

    (a) Class 3A – Hey Favor Allowed General Unsecured Claims: Class 3A consists of all Allowed General Unsecured Claims against Hey Favor.

    (b) Class 3B – Holdings Allowed General Unsecured Claims: Class 3B consists of all Allowed General Unsecured Claims against Holdings.

    (c) Class 3C – FVR Kansas Allowed General Unsecured Claims: Class 3C consists of all Allowed General Unsecured Claims against FVR Kansas.

    (d) Class 3D – FVR Medical Allowed General Unsecured Claims: Class 3D consists of all Allowed General Unsecured Claims against FVR Medical.

    (e) Class 3E – FVR New Jersey Allowed General Unsecured Claims: Class 3E consists of all Allowed General Unsecured Claims against FVR New Jersey.

    (f) Class 3F – FVR Texas Allowed General Unsecured Claims: Class 3F consists of all Allowed General Unsecured Claims against FVR Texas.

    (g) Class 3G – MedPro Allowed General Unsecured Claims: Class 3G consists of all Allowed General Unsecured Claims against MedPro.

    (h) Class 3H – MobiMeds Allowed General Unsecured Claims: Class 3H consists of all Allowed General Unsecured Claims against MobiMeds.

4. Class 4 – Intercompany Claims: Class 4 shall consist of all Intercompany Claims. Each Allowed Claim in this class is assigned a separate subclass.

5. Class 5 – Equity Interests: Class 5 consists of eight subclasses, Class 5A, Class 5B, Class 5C, Class 5D, Class 5E, Class 5F, Class 5G, and Class 5H.

    (a) Class 5A – Hey Favor Equity Interests: Class 5A consists of all Equity Interests of Hey Favor.

    (b) Class 5B – Holdings Equity Interests: Class 5B consists of all Equity Interests of Holdings.

    (c) Class 5C – FVR Kansas Equity Interests: Class 5C consists of all Equity Interests of FVR Kansas.

(d) Class 5D – FVR Medical Equity Interests: Class 5D consists of all Equity Interests of FVR Medical.

(e) Class 5E – FVR New Jersey Equity Interests: Class 5E consists of all Equity Interests of FVR New Jersey.

(f) Class 5F – FVR Texas Equity Interests: Class 5F consists of all Equity Interests of FVR Texas.

(g) Class 5G – MedPro Equity Interests: Class 5G consists of all Equity Interests of MedPro.

(h) Class 5H – MobiMeds Equity Interests: Class 5H consists of all Equity Interests of MobiMeds.

## C.    Treatment of Classes of Claims and Interests

Each holder of an Allowed Claim, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim, except to the extent different treatment is agreed to by: (a) the relevant Debtor(s); and (b) the holder of such Allowed Claim.  Unless otherwise indicated, the holder of an Allowed Claim, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.    **Class 1 - Other Secured Claims**

(a) *Classification:* Class 1 consists of any Other Secured Claims against the Debtors. Each Allowed Claim in this class is assigned to a separate subclass.

(b) *Treatment:* Each holder of an Allowed Class 1 Claim shall receive as determined by the Debtors or the Liquidating Trustee:

(i)    payment in full in Cash of its Allowed Class 1 Claim;

(ii)    the collateral securing its Allowed Class 1 Claim; or

(iii)    such other treatment rendering its Allowed Class 1 Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c) *Voting*: Class 1 is Unimpaired under the Plan.  Holders of Allowed Class 1 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.

2.    **Classes 2A, 2B, 2C, 2D, 2E, 2F, 2G, and 2H — Other Priority Non-Tax Claims**

(a) *Classification*: Classes 2A, 2B, 2C, 2D, 2E, 2F, 2G, and 2H consist of any Other Priority Claims against the Debtors other than tax claims.

(b) *Treatment*: Each holder of an Allowed Claim in Classes 2A, 2B, 2C, 2D, 2E, 2F, 2G, and 2H shall receive Cash in an amount equal to such Allowed Claim.

(c) *Voting*: Classes 2A, 2B, 2C, 2D, 2E, 2F, 2G, and 2H are Unimpaired under the Plan. Holders of Allowed Claims in Classes 2A, 2B, 2C, 2D, 2E, 2F, 2G, and 2H are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Claims in Classes 2A, 2B, 2C, 2D, 2E, 2F, 2G, and 2H are not entitled to vote to accept or reject the Plan.

3.     **Classes 3A, 3B, 3C, 3D, 3E, 3F, 3G, and 3H — General Unsecured Claims**

(a) *Classification*: Classes 3A, 3B, 3C, 3D, 3E, 3F, 3G, and 3H consist of any General Unsecured Claims against the Debtors.

(b) *Treatment*: Each holder of an Allowed Claim in Classes 3A, 3B, 3C, 3D, 3E, 3F, 3G, and 3H will receive a distribution, on a Debtor by Debtor basis, equal to its Pro Rata share of Available Cash of such Debtor remaining after payment in full of the Allowed Class 2 Claims.

(c) *Voting*: Classes 3A, 3B, 3C, 3D, 3E, 3F, 3G, and 3H are Impaired under the Plan. Holders of Claims in Classes 3A, 3B, 3C, 3D, 3E, 3F, 3G, and 3H are entitled to vote to accept or reject the Plan.

4.     **Class 4 – Intercompany Claims.**

(a) *Classification*: Class 4 consists of the Intercompany Claims against each of the Debtors. Each Allowed Claim in this class is assigned to a separate subclass.

(b) *Treatment*: Class 4 Intercompany Claims will receive a distribution, on a Debtor by Debtor basis, equal to its Pro Rata share of Available Cash of such Debtor remaining after payment in full of the Allowed Class 3 Claims.

(c) *Voting*: Class 4 is Impaired under the Plan. Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

5.     **Classes 5A, 5B, 5C, 5D, 5E, 5F, 5G, and 5H — Equity Interests**

(a) *Classification*: Classes 5A, 5B, 5C, 5D, 5E, 5F, 5G, and 5H consist of Equity Interests in the Debtors.

(b) *Treatment*: Each Equity Interest in Classes 5A, 5B, 5C, 5D, 5E, 5F, 5G, and 5H will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Equity Interests in Classes 5A, 5B, 5C, 5D, 5E, 5F, 5G, and 5H will not receive any distribution on account of such Equity Interest in Classes 5A, 5B, 5C, 5D, 5E, 5F, 5G, and 5H.

(c) *Voting*: Classes 5A, 5B, 5C, 5D, 5E, 5F, 5G, and 5H are Impaired under the Plan. Holders of Equity Interests in Classes 5A, 5B, 5C, 5D, 5E, 5F, 5G, and 5H are

deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

### D.     Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

### E.     Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### F.     Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request that the Bankruptcy Court deem the Plan accepted by the holders of such Claims or Interests in such Class.

### G.     Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### H.     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

# ARTICLE IV

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

**A.    General Settlement of Claims and Interests**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness.  Subject to Article VI of the Plan, all distributions made to holders of Allowed Claims in any Class are intended to be and shall be final.

**B.    Sources of Consideration for Plan Distributions**

The Plan provides for the distribution of all Cash held by or for the benefit of the Debtors on and after the Effective Date.  In addition to Cash on hand, the Debtors' property consists primarily of the Debtors' rights with respect to the Insurance Policies, including the D&O Policies, and the proceeds of the NOL Sale, once received. Finally, the proceeds of all Causes of Action shall vest in a trust for the benefit of the Debtors' Estates.

**C.    Liquidating Trustee**

(a)    Authority.  The Liquidating Trustee shall have the authority and right on behalf of each of the Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)    except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors;

(ii)    make Distributions to holders of Allowed Claims in accordance with the Plan;

(iii)    exercise its reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandoning of the remaining assets of the Debtors under the Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims;

(iv)    Prosecute all Causes of Action on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Liquidating Trustee may determine is in the best interests of the Debtors;

(v)    make payments to existing professionals who will continue to perform in their current capacities;

(vi)    retain professionals to assist in performing its duties under the Plan;

(vii)    maintain the books and records and accounts of the Debtors;

(viii)    invest Cash of the Debtors, including any Liquidation Proceeds, including any Causes of Action, and any income earned thereon;

(ix)    incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Liquidating Trustee;

(x)    administer each Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Petition Date through the liquidation of such Debtor as determined under applicable tax laws and (iii) representing the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xi)    prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required hereunder, by any Governmental Unit or applicable law;

(xii)    determine whether to create a liquidating trust for the assets of a Debtor and which assets to transfer to such liquidating trust;

(xiii)    perform other duties and functions that are consistent with the implementation of the Plan.

(b)    <u>Indemnification</u>.    Each of the Debtors shall indemnify and hold harmless the Liquidating Trustee for any losses incurred in such capacity, except to the extent such losses were the result of the Liquidating Trustee's gross negligence, willful misconduct or criminal conduct.

## D.    **Corporate Existence**

(a)    After the Effective Date, the Liquidating Trustee may engage in any other transaction in furtherance of the Plan.  Any such transactions may be effective as of the Effective Date pursuant to the Confirmation Order without any further action by the members, managers, or directors of any of the Debtors.

(b)    Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors,

or any other Entity or Person.  All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

**E.     Release of Liens**

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released, settled, and compromised, and the holder of such mortgages, deeds of trust, Liens, pledges, or other security interest against any property of the Debtors' Estates shall be authorized to take such actions as may be reasonably requested by the Debtors to evidence such releases.

**F.     Cancellation of Notes, Instruments, Certificates, and Other Documents**

On the Effective Date, except to the extent otherwise provided herein, all notes, instruments, Certificates, and other documents evidencing Claims or Interests shall be cancelled and the obligations of the Debtors thereunder or in any way related thereto shall be discharged; *provided*, *however*, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of allowing holders of Allowed Claims to receive distributions under the Plan.

**G.     Section 1146(a) Exemption**

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by any Debtor, or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**H.     Effectuating Documents; Further Transactions**

On and after the Effective Date, the Liquidating Trustee is authorized to and may issue,

26

execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

**I.      Preservation of Causes of Action**

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors reserve any and all Causes of Action.  On and after the Effective Date, the Liquidating Trustee may pursue such Causes of Action in its sole discretion.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Liquidating Trustee will not pursue any and all available Causes of Action against them.  No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, litigate to judgment, or enforce the judgment of any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself.

**J.      Approval of the NOL Sale**

The Debtors will request that the Confirmation Order include approval of the NOL Sale, with the assets sold thereby transferred free and clear of liens, claims and interests pursuant to sections 1123(b)(4), 1123(a)(5) and 1141(c) of the Bankruptcy Code.

**K.      Closing of Chapter 11 Cases**

After the Chapter 11 Cases for the Debtors have been fully administered, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Debtors' Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**ARTICLE V**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.      Rejection of Executory Contracts and Unexpired Leases**

Each Executory Contract and Unexpired Lease shall be deemed rejected, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under sections 365 and 1123 of the Bankruptcy Code, unless such Executory

Contract or Unexpired Lease: (i) has been previously rejected by the Debtors, (ii) as of the Effective Date is subject to a pending motion to assume such Executory Contract or Unexpired Lease; (iii) is a contract, release, or other agreement or document entered into in connection with the Plan; or (iv) is a D&O Policy or an insurance policy.

## B. <u>Rejection Claims</u>

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and served on the Liquidating Trustee no later than fourteen (14) days after the Effective Date. For the avoidance of doubt, the Debtors are not required to serve notices of the rejection of Executory Contracts or Unexpired Leases to any counterparties as such counterparties will receive notice of when Rejection Claims are due upon receipt of the notice of Effective Date.  In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtors, no later than fourteen (14) days after the Effective Date.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidating Trustee, the Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Liquidating Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

## C. <u>Indemnification</u>

On and as of the Effective Date, the Indemnification Provisions will be assumed and irrevocable and will survive the effectiveness of the Plan, and the Debtor's governance documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtor's current and former directors, officers, employees, and agents to the fullest extent permitted by law and at least to the same extent as the organizational documents of the Debtor on the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and the Debtors will not amend and/or restate their respective governance documents before or after the Effective Date to terminate or adversely affect any of the Debtor's obligations to provide such Indemnification Provisions or such directors', officers', employees', or agents' indemnification rights.

## D. <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired

Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Debtors' Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**E.      Insurance Policies**

Each insurance policy, including any D&O Policies, shall be assumed by the applicable Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, to the extent such insurance policy is executory, unless such insurance policy previously was rejected by the Debtors pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under the D&O Policies shall remain available to all individuals within the definition of "Insured" in the D&O Policies.

**F.      Reservation of Rights**

Nothing contained in the Plan shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Liquidating Trustee, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

**A.      Distributions on Account of Claims and Interests Allowed as of the Effective Date**

As of the close of business on the Effective Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents, shall be deemed closed, and there shall be no further changes in the record of holders of any of the Claims or Interests.  The Debtors or the Liquidating Trustee shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Effective Date.

**B.      Distributions on Account of Claims Allowed After the Effective Date**

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims shall be

deemed to have been made on the Effective Date.

**C.      Special Rules for Distributions to Holders of Disputed Claims**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (i) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (ii) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claims have been Allowed or expunged.  Any distributions arising from property distributed to holders of Allowed Claims in a Class and paid to such holders under the Plan shall also be paid, in the applicable amounts, to any holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such distributions were earlier paid to holders of Allowed Claims in such Class.

**D.      Delivery of Distributions**

**1.      Record Date for Distributions to Holders**

On the Effective Date, the Claims Register shall be closed, and Debtors shall be authorized and entitled to recognize only those record holders, if any, listed on the Claims Register as of the close of business on the Effective Date.  The Debtors or the Liquidating Trustee shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Effective Date.

**2.      Distribution Process**

Except as otherwise provided herein, the Debtors shall make the Initial Distribution to holders of Allowed Claims no later than the Initial Distribution Date and thereafter, the Debtors shall from time to time determine the subsequent Distribution Dates, if any.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

The Liquidating Trustee shall reserve an amount sufficient to pay holders of Disputed Administrative Expense Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims.  After the resolution of all Disputed Administrative Expense Claims, the Liquidating Trustee shall treat any amounts that were reserved for Disputed Administrative Expense claims that do not become Allowed Claims as Available Cash.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Administrative Expense Claim shall, on account of such Allowed Administrative Expense Claim, receive a distribution in excess of the Allowed amount of such Administrative Expense Claim.

3.      **Minimum; De Minimis Distributions**

If either (a) all Allowed Administrative Expense Claims have been paid in full or (b) the amount of any final distributions to holders of Allowed Administrative Expense Claims would be $50 or less and the aggregate amount of Cash available for distributions to holders of Allowed Administrative Expense Claims is less than $10,000, then no further distribution shall be made by the Liquidating Trustee and any surplus Cash shall be paid to holders of General Unsecured Claims on a Pro Rata basis on account of their Allowed Class 3 Claims.

4.      **Compliance Matters**

In connection with the Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and the Liquidating Trustee reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

5.      **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

6.      **Undeliverable and Unclaimed Distributions**

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtors or the Liquidating Trustee, as applicable, has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date the Initial Distribution is made.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Debtors automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred.

7.      **Manner of Payment**

At the option of the Debtors or the Liquidating Trustee, any Cash payment to be made

hereunder may be made by a check or wire transfer.

8.     **Surrender of Cancelled Instruments or Securities**

On the Effective Date, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Debtors.  Such Certificate shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.

9.     **Setoff**

The Debtors and the Liquidating Trustee may, but shall not be required to, set off against any Claim, any Claims of any nature whatsoever that the Debtors or the Liquidating Trustee may have against the holder of such Claim; provided, that, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Liquidating Trustee of any such Claim the Debtors or the Liquidating Trustee may have against the holder of such Claim.

10.     **Distributions Made After the Effective Date**

Distributions made after the Effective Date to holders of Disputed Administrative Expense Claims that are not Allowed Administrative Expense Claims as of the Effective Date, but which later become Allowed Administrative Expense Claims shall be deemed to have been made on the Effective Date.

E.     **Claims Paid or Payable by Third Parties**

1.     **Claims Paid by Third Parties**

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor.  To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such holder shall repay, return or deliver any distribution held by or transferred to the holder to the Debtor or the Liquidating Trustee to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.     **Claims Payable by Insurance Carriers**

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agree to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Liquidating Trustee without a Claims objection having to be filed and without any further notice

to or action, order, or approval of the Bankruptcy Court.

3.      **Applicability of Insurance Policies**

Except as otherwise provided herein, distributions to holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

F.      **Allocation Between Principal and Accrued Interest**

Except as otherwise provided herein, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Effective Date.

## ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

A.      **Disputed Claims Process**

The Liquidating Trustee shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any Order entered in the Debtors' Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed pursuant to the Plan or a Final Order, including the Confirmation Order (when it becomes a Final Order), allowing such Claim.  **Except as otherwise provided herein, all Proofs of Claim filed after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor, without the need for any objection by any Debtor or the Liquidating Trustee or any further notice to or action, order, or approval of the Bankruptcy Court.**

B.      **Objections to Claims**

As of the Effective Date, objections to, and requests for estimation of, Administrative Expense Claims against the Debtors may be interposed and prosecuted only by the Liquidating Trustee.  Such objections and requests for estimation shall be served and filed (a) on or before the 75th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Liquidating Trustee.

C.      **Estimation of Claims.**

The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Administrative Expense Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or Liquidating Trustee previously objected to such Administrative Expense Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Administrative Expense Claim at any time during litigation concerning any objection to any Administrative Expense Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Administrative Expense Claim, the amount so estimated shall constitute either the Allowed amount of such Administrative Expense Claim or a maximum limitation on such Administrative Expense Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Administrative Expense Claim, the Debtors or Liquidating Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Administrative Expense Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Administrative Expense Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**D.      No Distributions Pending Allowance**

If an objection to an Administrative Expense Claim is filed as set forth in <u>Article VII</u>, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

**E.      Resolution of Claims**

Except as otherwise provided herein, or in the Confirmation Order or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trustee shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Administrative Expense Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their estates may hold against any Person, without the need for further approval of the Bankruptcy Court. The Liquidating Trustee or its successor may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Debtors.

**F.      Amendments to Claims**

On or after the Effective Date, except as otherwise provided herein, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Liquidating Trustee. Absent such authorization, any new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

**G.      Adjustment to Claims Without Objection**

Any duplicate Claim or any Claim that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Liquidating Trustee without the Liquidating Trustee having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court.

**H.**     **No Interest**

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

**I.**     **Single Satisfaction of Claims**

Holders of Allowed Claims may assert such Claims against the Debtors obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the Debtors based upon the full Allowed amount of such Claims.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent (100%) of the underlying Allowed Claim plus applicable interest, if any.

**J.**     **Disallowance of Claims and Interests**

All Claims of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Liquidating Trustee allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtor or the Liquidating Trustee, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE COURT, OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

## ARTICLE VIII

## EFFECT OF CONFIRMATION OF THE PLAN

**A.** **Binding Effect**

Confirmation of the Plan does not provide the Debtors with a discharge under section 1141 of the Bankruptcy Code because the Plan is a liquidating chapter 11 plan. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtors, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

**B.** **Releases by the Debtors**

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including without limitation the Director Payment, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors and their Estates from any and all Causes of Action, including any derivative claims, asserted on behalf of Debtors, that the Debtors or their Estates would have been legally entitled to assert in their own right or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, Debtors, Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Debtors' Chapter 11 Cases, the Disclosure Statement, the DIP Facility, the Sale Transactions, Prepetition Loan Documents, the Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Prepetition Loan Documents, or the Plan, the filing of the Debtors' Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. The Debtors knowingly grant this Release notwithstanding that the Debtors may hereafter discover facts in addition to, or different from, those which either the Debtors now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and the Debtors expressly waive any and all rights that they may have under any statute or common law principle which would limit the effect of the Release to those claims actually known or suspected to exist as of the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.** Entry of the confirmation order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Court's finding that the Debtors' release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of the Claims released by the Debtors' release; (3) in the best

interests of the Debtors' Estates and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtors' release.

**C.    Releases by Holders of Claims and Interests**

**As of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtors and each Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from in whole or in part, Debtors, Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Debtors' Chapter 11 Cases, the Disclosure Statement, the DIP Facility, the Prepetition Loan Documents, the Plan, the Disclosure Statement, the Sale Transactions, the filing of the Debtors' Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.   Each Releasing Party knowingly grants this release notwithstanding that the Releasing Party may hereafter discover facts in addition to, or different from, those which either the Releasing Party now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and the Releasing Party expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of the release to those claims actually known or suspected to exist as of the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Entry of the confirmation order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of this release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Court's finding that this release is: (1) in exchange for the good and valuable consideration, the Director Payment and substantial contributions provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by this release; (3) in the best interests of the Releasing Party and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any Claim released pursuant hereto.**

**D.    Exculpation**

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Debtors' Chapter 11 Cases, the Disclosure Statement, the Plan, the Sale Transactions, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure**

Statement, the Sale Transactions, the Plan, the filing of the Debtors' Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud or gross negligence, but in all respects the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

E.    **Injunction**

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

F.    **Protection Against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Debtor, or any Entity with which a Debtor has been or is associated, solely because such Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

### G.    <u>Recoupment</u>

In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

### H.    <u>Reimbursement or Contribution</u>

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

### I.    **Releases and Setoff- Certain Governmental Unit Specific Provisions**

Nothing in the Plan or any related documents discharges, releases, precludes or enjoins: (i) any police or regulatory liability to a Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Effective Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Effective Date; or (iv) any liability to a Governmental Unit on the part of any non-debtor.  Nor shall anything in the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing any liability described in the preceding sentence. Nothing in the Plan shall affect any recoupment rights of any Governmental Unit. Nothing in the Plan or any related documents authorize the transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization, (v) certification, or (vi) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under nonbankruptcy laws, regulations, and rules (including police or regulatory law or environmental law, or otherwise).

Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtors from any liability owed to the Texas Comptroller of Public Accounts for a tax debt, including interest and penalties on such tax.  This provision is not admission by any party that such liability exists. Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Texas Comptroller of Public Account's setoff rights under section 553 of the Bankruptcy Code.  This provision is not admission by any party that such setoff rights exist.

# ARTICLE IX

# CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.    **Conditions Precedent to the Effective Date**.

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article IX.B of the Plan:

1.    the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Debtors, and shall:

(a)    authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(b)    decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(c)    authorize the Liquidating Trustee or Debtors, as applicable or necessary, to make all distributions and issuances as required under the Plan, including cash;

(d)    authorize the implementation of the Plan in accordance with its terms; and

(e)    provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

2.    the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the Debtors;

3.    subject to the restrictions stated in Article II.C of this Plan, all Professional fees and expenses of retained professionals required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date have been reserved pending approval by the Bankruptcy Court;

4.    all reasonable and documented fees and expenses of the Prepetition Agent, the Prepetition Lenders, the DIP Agent, and the DIP Lenders shall have been paid, or

if objected to, shall have been reserved; and

5.      The Asserted WARN Admin Claims and the Asserted Caremark Admin Claim shall have (a) been disallowed, (b) been estimated at an amount by the Court that would permit the Debtors to satisfy section 1129(a)(9)(A) or (c) agreed to be satisfied in their ultimately Allowed amount, if any, from proceeds of Avoidance Actions.

## B.      <u>Waiver of Conditions Precedent</u>

The Debtors may waive any of the conditions to the Effective Date set forth in <u>Article IX.A</u> of the Plan at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

## C.      <u>Effect of Non-Occurrence of Conditions to Consummation</u>

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE X

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

## A.      <u>Modification of Plan</u>

Effective as of the date hereof, (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein; and (b) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

## B.      <u>Effect of Confirmation on Modifications</u>

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

## C.      <u>Withdrawal of Plan</u>

The Debtors reserve the right to withdraw the Plan before the Confirmation Date and to

file subsequent chapter 11 plans. If the Debtors withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of the Debtors or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Debtors' Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Debtors' Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the

Plan;

7.       enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of
         the Bankruptcy Code;

8.       grant any consensual request to extend the deadline for assuming or rejecting Unexpired
         Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.       issue injunctions, enter and implement other orders, or take such other actions as may be
         necessary or appropriate to restrain interference by any Entity with Consummation or
         enforcement of the Plan;

10.      hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes
         of Action in connection with or in any way related to the Debtors' Chapter 11 Cases,
         including: (a) with respect to the repayment or return of distributions and the recovery of
         additional amounts owed by the holder of a Claim or an Interest for amounts not timely
         repaid pursuant to Article VI.E.1 of the Plan; (b) with respect to the releases, injunctions,
         and other provisions contained in Article VIII of the Plan, including entry of such orders
         as may be necessary or appropriate to implement such releases, injunctions, and other
         provisions; (c) that may arise in connection with the Consummation, interpretation,
         implementation, or enforcement of the Plan, the Confirmation Order, and contracts,
         instruments, releases, indentures, and other agreements or documents created in
         connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

11.      enter and implement such orders as are necessary or appropriate if the Confirmation
         Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any
         inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.      hear and determine matters concerning state, local, and federal taxes in accordance with
         sections 346, 505, and 1146 of the Bankruptcy Code;

14.      enter an order or Final Decree concluding or closing the Debtors' Chapter 11 Cases;

15.      enforce all orders previously entered by the Bankruptcy Court; and

16.      hear any other matter not inconsistent with the Bankruptcy Code.

# ARTICLE XII

# MISCELLANEOUS PROVISIONS

## A.    Immediate Binding Effect

        Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h),
or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be
immediately effective and enforceable and deemed binding upon the Debtors and any and all

holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**B.**     **Additional Documents**

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors and all holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.**     **Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof) until the Debtors' Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

**D.**     **Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the holders of Claims or Interests prior to the Effective Date.

**E.**     **Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**F.**     **Service of Documents**

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served on:

| | |
|---|---|
| If to the Debtors: | Hey Favor, Inc. |
| | The Pill Club Pharmacy Holdings, LLC |
| | MedPro Pharmacy, LLC |
| | MobiMeds, Inc. |
| | FVR Medical Group, Inc. |

FVR Medical Group of New Jersey, PC
FVR Medical Group of Kansas, PA
FVR Medical Group of Texas, PA
Attn.: Elizabeth Meyerdirk
liz@internal-pillclub.com

Counsel to the Debtors

Winston & Strawn LLP
800 Capitol Street, Suite 2400
Houston, Texas 77002
Attention:    Katherine A. Preston
Telephone: (713) 651-2600
kpreston@winston.com

and

Winston & Strawn LLP
200 Park Avenue
New York, New York 10166
Attention:    Timothy Walsh
Telephone: (212) 294-6700
twwalsh@winston.com

and

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Attention:    Daniel McGuire
Telephone: (312) 558-5600
DMcguire@winston.com

United States Trustee

Office of the United States Trustee for the
Northern District of Texas
Earle Cabell Federal Building
1100 Commerce Street, Room 976
Dallas, Texas 75242
Attention: Elizabeth A. Young and
        Erin Schmidt
Elizabeth.A.Young@usdoj.gov
Erin.Schmidt2@usdoj.gov

## G.    Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in
effect in the Debtors' Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code
or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any

injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall take effect on the Effective Date, and, thereafter, remain in full force and effect in accordance with their terms.

**H.    Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**I.    Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from https://cases.creditorinfo.com/thepillclub  or  the  Bankruptcy  Court's  website  at https://www.txnb.uscourts.gov/. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

**J.    Non-Severability**

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.

**K.    Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code and, therefore, neither any of such parties or individuals or the Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

**L.    Dissolution of Creditors' Committee**

On the Effective Date, the Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Debtors' Chapter 11 Cases.

**M.**    <u>**Waiver or Estoppel**</u>

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

*[Remainder of page intentionally left blank.]*

HEY FAVOR, INC.
THE PILL CLUB PHARMACY HOLDINGS, LLC
MEDPRO PHARMACY, LLC
MOBIMEDS, INC.
FVR MEDICAL GROUP, INC.
FVR MEDICAL GROUP OF NEW JERSEY, PC
FVR MEDICAL GROUP OF KANSAS, PA
FVR MEDICAL GROUP OF TEXAS, PA


*/s/ Elizabeth Meyerdirk*
Elizabeth Meyerdirk
Authorized Signatory