Katherine A. Preston (State Bar No. 24088255)
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, Texas 77002
T: (713) 651-2600
F: (713) 651-2700
kpreston@winston.com

Timothy W. Walsh (admitted *pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166-4193
T: (212) 294-6700
F: (212) 294-4700
twwalsh@winston.com

Daniel J. McGuire (admitted *pro hac vice*)
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601-9703
T: (312) 558-5600
F: (312) 558-5700
dmcguire@winston.com

*COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re:<br>THE PILL CLUB PHARMACY HOLDINGS, LLC, *et al.*, [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-41090 (ELM)<br><br>(Jointly Administered) |

**MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER
APPROVING COMPROMISE AND AGREEMENT**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txnb.uscourts.gov/ no more than twenty-four (24) days after the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk and filed on the docket no more than twenty-four (24) days after the**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Hey Favor, Inc. (3206), The Pill Club Pharmacy Holdings, LLC (0112), MedPro Pharmacy, LLC (1138), MobiMeds, Inc. (3165), FVR Medical Group, Inc. (6320), FVR Medical Group of New Jersey, PC (2934), FVR Medical Group of Kansas, PA (5449), and FVR Medical Group of Texas, PA (6479). The service address for the Debtors is: 411 Borel Avenue, San Mateo, CA 94402.

**date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

**Relief Requested**

1. The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, conditionally approving the agreement to be attached as **Exhibit 1** (the "Preference Settlement Agreement") to the Order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.[2]

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court" or "Court") has jurisdiction over this matter pursuant to 28 U.S.C. section 1334. This is a core proceeding pursuant to 28 U.S.C. section 157(b).

3. Venue is proper pursuant to 28 U.S.C. sections 1408 and 1409.

4. The statutory bases for the relief requested herein are 11 U.S.C. section 105(a) of title 11 of the United States Code, 11 U.S.C. sections 101–1532 (the "Bankruptcy Code"), Rules 2002, 4001, and 9019 of the Federal Rules of Bankruptcy Procedure, and Rules 4001-1, 9007-1, 9013-1 and 9019-1 of the Local Bankruptcy Rules of The United States Bankruptcy Court for the Northern District of Texas (the "Local Rules").

**Background**

---

[2] At present, the Preference Settlement Agreement has not be finalized. The material terms of the Preference Settlement Agreement as agreed to by the Committee and the State of California are described herein and in greater detail as **Exhibit B** to this Motion. The Preference Settlement Agreement may remain subject to finalization at the time this Motion is heard. In such event, the parties will request approval of the Preference Settlement Agreement as the same may be agreed to among the parties, with the final version to be filed with the Court.

2

A.  **Procedural Background**

5.  On April 18, 2023, each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Elizabeth Meyerdirk, Debtors' Chief Executive Officer, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 26] (the "First Day Declaration").

6.  The Debtors continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 4, 2023, the Office of the United States Trustee for the Northern District of Texas appointed an official committee of unsecured creditors in these chapter 11 cases (the "Committee").

7.  On September 13, 2023, the Court entered its *Order Approving Stipulation to Authorize the Official Committee of Unsecured Creditors to Prosecute Certain Avoidance Actions with Modifications* [ECF No. 486] (the "Stipulation"), which granted the Committee standing to prosecute, on behalf of the Debtors' estates, avoidance actions against various transferees, including against the State of California.

8.  On January 25, 2024, the Debtors filed a modified chapter 11 plan of liquidation [ECF No. 568] (the "Plan")[3] and associated disclosure statement [ECF No. 569] (the "Disclosure Statement"). On January 26, 2024, the Court entered an order conditionally approving the Disclosure Statement and scheduling a combined hearing (the "Combined Hearing") on the Disclosure Statement and confirmation of the Debtors' Plan [ECF No. 570]. The Combined Hearing is currently scheduled for Tuesday, May 14, 2024, at 9:30 a.m. (CT).

---

[3] Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to them in the First Day Declaration or the Plan.

3

B.      **The Debtors' Course of Dealing with the State of California**

9.      On March 28, 2019, a qui tam action was filed against, among other defendants, the predecessor entities to FVR Medical, TopCo, MobiMeds, and MedPro (together, the "Qui Tam Debtors") in Sacramento County Superior Court captioned *The State of California ex rel. Happy Baumann and Cindy Swintelski v. The Pill Club Medical Group, Inc., et al.*, Case No. 34-2019-00253324, alleging claims amounting to violations of California's False Claims Act, California Government Code section 12650 et seq., and the Insurance Frauds Prevention Act, California Insurance Code section 1871.7 ("Qui Tam Action"). The Qui Tam Action launched a nearly four-year investigation by the California Department of Justice ("CDOJ") and the California Department of Insurance ("CDI") into the existence of any false claims submitted in or to the State of California.

10.     On January 18, 2023, the Qui Tam Action was fully and finally concluded by two settlement agreements entered into with each of the California Department of Insurance and the CDOJ (together, the "Qui Tam Settlement Agreements"). Pursuant to the Settlement Agreements, the Qui Tam Debtors paid $3.275 million to the California Department of Insurance and $15 million to the CDOJ in full and final settlement and discharge of claims brought in the Qui Tam Action (the "Transfers"). The Qui Tam Settlement Agreements explicitly provide that there was no finding of wrongdoing on the part of any Debtor.

11.     On January 19, 2023, eighty-nine (89) days prior to the Petition Date, the Transfers were made from one or more of the Debtors' bank accounts to CDOJ and CDI in the total amount of $18.275 million. The Transfers therefore took place on or within ninety (90) days before the Petition Date (the "Preference Period").

4

12. By virtue of the Qui Tam Settlement Agreements and the Transfers, CDOJ and CDI was a creditor of the Debtors' estates during the Preference Period. The State of California is also one of three transferees specifically listed in the Stipulation against whom the Committee is authorized to pursue avoidance actions.

13. On December 1, 2023, the Committee commenced Adversary Proceeding No. 23-04093 against the State of California, asserting causes of action for (i) avoidance of the Transfers as preferential and (ii) recovery of the Transfers pursuant to sections 547(b) and 550(a) of the Bankruptcy Code. On December 8, 2023, the Committee filed an Amended Complaint substituting the State of California with CDOJ and CDI as defendants, alleging the same two causes of action for avoidance of a preferential transfer and recovery of property ("Preference Action").

14. The Committee and the State of California are hereinafter referred to as the "Litigants," and the Litigants and the Debtors are hereinafter referred to as the "Parties."

15. Bona fide disagreements and controversies exist between the Litigants as to the Preference Action. The Parties desire to compromise and settle the Preference Action, and any action or cause of action which the Parties may have against each other, whether known or unknown, and whether asserted or not as stated herein concerning the Transfers.

16. The Parties believe it is in their respective best interests to resolve the matters in controversy pursuant to the Preference Settlement Agreement.

C. **The Preference Settlement Agreement**

17. The Litigants and their respective counsel engaged in good faith, arms' length negotiations to reach a resolution of the disputes that may or do exist among them and to avoid the cost and uncertainty of litigation. These negotiations culminated in a JAMS mediation (the "Mediation") on March 26, 2024, which was conducted via Zoom, and attended by representatives

5

of the Committee, the Debtors, and the State of California, including CDOJ, CDI, and California Department of Health Care Services ("DHCS"), each of which received funds from the Qui Tam Settlement Agreement.

18. At the conclusion of the Mediation, the Litigants reached a compromise, which they memorialized in preliminary term sheet (the "Term Sheet"), in furtherance of a final resolution of the Preference Action, and which will be finalized as a formal Preference Settlement Agreement.

19. The settlement, as tentatively memorialized in the Term Sheet represents a complete resolution of the disputes between the Parties. The material terms of the Preference Settlement Agreement are as follows:[4]

    a. Settlement Amount. In full satisfaction of all claims by the Committee and Debtors, the State shall pay the total sum of $10,000,000.00 to Debtors (the "Settlement Amount"), allocated as follows: (i) CDOJ shall pay the sum of $2,173,265.60; (ii) DHCS shall pay the sum of $6,168,561.95; and (iii) CDI shall pay the sum of $1,658,l72.45. The Settlement Amounts shall be paid separately by CDOJ, DHCS, and CDI, respectively. CDOJ, DHCS, and CDI are individually and not jointly liable for payment of their respective shares of the Settlement Amount.

    b. Releases. Upon receipt of the Settlement Amount, the Committee and Debtors shall release the State of California of all claims the Debtors may have against the State, including any claims asserted in the Preference Action.

    c. Section 502(h) Claim. Within 30 days following payment by DHCS to Debtors, DHCS may file an allowed unsecured proof of claim in the amount of $6,168,651.95, pursuant to 11 U.S.C. § 502(h). CDOJ and CDI waive any right to file a proof of claim under 11 U.S.C.§ 502(h).

    d. Conditions Precedent. The Preference Settlement Agreement is subject to the following conditions precedent:

        a. Formal Approval of State of California. The Term Sheet is subject to formal approval chain of authority of each of CDOJ, CDI and DHCS.

---

[4] The summary of the Preference Settlement Agreement is for discussion purposes only, and, in all cases, the terms of the finalized Preference Settlement Agreement itself shall govern.

b. <u>Formal Settlement Agreement</u>. The Term Sheet is subject to a mutually agreed Preference Settlement Agreement.

c. <u>Approval by Bankruptcy Court Order</u>. The Preference Settlement Agreement is subject to approval by Bankruptcy Court order via either a FRBP 9019 motion or other appropriate procedural process.

e. <u>Timing of Settlement Amounts Payment</u>. Upon satisfaction of the conditions precedent, the State of California shall pay the Settlement Amounts on or before July 31, 2024, or within 20 days of the California Legislature's approval of the 2024/2025 State of California budget, whichever is later.

20. Resolution of the disputes will not hinder the liquidation of any Debtor assets and will instead benefit the Debtors' estates by resolving potential litigation, providing additional liquidity to the Debtors' estates, and reducing the overall cost and expenses associated with litigating such claims. In particular, the Debtors' proposed plan is conditioned on either the compromise or disallowance two large asserted Administrative Claims, specifically the Asserted Caremark Admin Claim (in the amount of $992,600.92) and the Asserted WARN Admin Claims (in an amount estimated as approximately $3,000,000). Approval of the Preference Settlement Agreement would provide the reserve cash to pay these claims in full they are ultimately allowed, thereby providing a pathway to confirmation of the Debtors' chapter 11 plan, which the Debtors, Committee, and creditors other than Caremark overwhelmingly support; according to the Debtors' tabulation of the ballots cast with respect to the Debtors' Plan, the Plan has received nine votes in favor of accepting the Plan and two votes (both cast by Caremark) to reject Plan.

21. As noted in Paragraph 19(d)(a), above, the settlement remains fully subject to approval by each of CDOJ, CDI and DHCS. In the event such approval is not obtained, the Debtors will not be able to consummate the proposed settlement. For the avoidance of doubt, the Preference Settlement Agreement, and any order approving this Motion, will not be binding and enforceable against the Parties until each of CDOJ, CDI and DHCS obtains final approval. If the requisite

7

approvals are obtained after the entry of an order approving the Motion, Debtor will file a notice with the Court reflecting that the Settlement Agreement has been approved (the "Approval Notice"). In addition, upon the filing of the Approval Notice, the Parties will file a stipulation of dismissal of the Preference Action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) and Bankruptcy Rule 7014 that is substantially in the form attached hereto as **Exhibit B**.

## SUPPORTING AUTHORITY

22.     Pursuant to the foregoing, by and through this Motion, the Debtors respectfully request the entry of an order approving the Preference Settlement Agreement and authorizing the Parties to take any necessary and appropriate actions in consummation thereof.

23.     This Court has the right and the power to approve the Preference Settlement Agreement. *See* 11 U.S.C. § 105; Fed. R. Bankr. P. 9019. Bankruptcy Rule 9019 provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

24.     The Fifth Circuit supplemented the provisions of Bankruptcy Rule 9019 to require, as a condition to approval of a settlement, that the settlement is "fair and equitable and in the best interest of the estate." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980); *see also Connecticut General Life Ins. Co. v. United Companies Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).

25.     To aid in such assessment, the Fifth Circuit further instructed courts to consider the following three factors:

8

    a. The probability of success in the litigation, with due consideration for the uncertainty in fact and law;

    b. The complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and

    c. All other factors bearing on the wisdom of the compromise.

*Foster Mortgage Corp.*, 68 F.3d at 917.

26. In relation to the probability of success in the litigation, courts have held that it is unnecessary to conduct a mini trial on the various claims and defenses to be resolved under the settlement. "The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision." *Official Committee of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997) (quoting *La Salle Nat'l Bank v. Holland (In re American Reserve Corp.)*, 841 F.2d 159, 163 (7th Cir. 1987)). Here, the Litigants dispute several issues, including: (i) whether the Debtors were solvent when the Transfers occurred, (ii) whether CDOJ, CDI, and DHCS are "initial transferees" of the Transfers, and (iii) whether the State of California may assert sovereign immunity as an defense to the avoidance claim. If the Parties were to proceed with full-scale litigation to resolve this dispute, the process of discovery alone would prove onerous for the Debtors' estates. Further, there is no guarantee that the Committee would be successful in any litigation. While the Debtors and the Committee believe that there is some likelihood of success if the Preference Action were litigated, investigating, developing, and litigating such a claim would be costly to the estate and there is not guarantee that the Debtors would be successful. Moreover, the State of California has indicated that if required to litigate the Preference Action, it would appeal any adverse judgment, further increasing the costs and further lengthening the time before any recovery could occur.

9

27. Next, in relation to the complexity, duration, expense and delay of the litigation factor, a duty exists "to conserve the assets of the estate to the extent possible where … there are finite assets available to fund the cost of litigation." *Monus v. Lambros*, 286 B.R. 629, 638 (N.D. Ohio 2002), *aff'd*, 63 Fed. App'x 215 (6th Cir. 2003) (quoting *In re Lee Way Holding Co.*, 120 B.R. 881, 890 (Bankr. S.D. Ohio 1990)). As explained by the Fifth Circuit Court of Appeals, "compromises are a normal part of the process of reorganization, oftentimes desirable and wise methods of bringing to a close proceedings [that would be] otherwise lengthy, complicated and costly." *Cajun Elec.*, 119 F.3d at 354 (quoting *Jackson Brewing Co.*, 624 F.2d at 602). The cost to advance the claims in the Preference Action against the State of California exceeds the potential benefit to the Debtors' estates, especially in light of the possibility that the State of California would appeal if the Committee prevailed.

28. Finally, as for all other factors bearing on the wisdom of the compromise, at least two other factors are utilized in this Circuit: (a) the best interests of the creditors, with proper deference to their reasonable views; and (b) the extent to which the settlement is truly the product of arms-length bargaining, and not fraud or collusion. *See Cajun Elec.*, 119 F.3d at 356, 358; *see also Foster Mortgage Corp.*, 68 F.3d at 917.

29. The Debtors, in exercising their sound business judgment, determined that the Preference Settlement Agreement is supported by each of the above factors, and is, therefore, fair and equitable and in the best interests of the Debtors, their estates, and their creditors because it will (i) prevent the Committee from being required to expend significant sums of money in litigating the Preference Action and (ii) produce funds through which the Debtors will be able to pay in full the Asserted Caremark Admin Claim and the Asserted WARN Admin Claims, if allowed by this Court, thereby facilitating confirmation of the Debtors' Plan. Moreover, the

Preference Settlement Agreement is the product of extensive negotiations among true third parties. Accordingly, the Debtors submit the parties' good faith in proposing same to this Court is unassailable.

30.  As summarized above and set forth more fully in the Preference Settlement Agreement, the Litigants reached an agreement that finally resolves all disputes among the Parties. The settlement thus eliminates future costs and uncertainties of litigation and resolves any and all disputes regarding the claims in the Preference Action, benefiting the Debtor's creditors.

31.  In sum, the Debtors believe that the proposed Preference Settlement Agreement is fair and equitable and in the best interests of their estates and creditors. Accordingly, the Debtors request the Preference Settlement Agreement be approved by the Court.

### Reservation of Rights

32.  Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a

concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Notice

26.   Notice of the hearing on the relief requested in the Motion has been provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances. The Debtors served parties in interest, whether by electronic mail, overnight courier, or hand delivery, including: (a) the United States Trustee for the Northern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Northern District of Texas; (d) the Official Committee of Unsecured Creditors; (e) the State of California; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally blank]*

**WHEREFORE**, the Debtors respectfully request entry of the Order substantially in the form attached to this Motion, granting the relief requested herein and granting such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| Dated: April 25, 2024<br>Houston, Texas | **WINSTON & STRAWN LLP**<br><br>*/s/ Katherine A. Preston*<br>Katherine A. Preston (TX Bar No. 24088255)<br>800 Capitol St., Suite 2400<br>Houston, Texas 77002<br>Telephone: (713) 651-2600<br>Facsimile: (713) 651-2700<br>Email: kpreston@winston.com<br><br>and<br><br>Timothy W. Walsh (admitted *pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 294-6700<br>Facsimile: (212) 294-4700<br>Email: twwalsh@winston.com<br><br>and<br><br>Daniel J. McGuire (admitted *pro hac vice*)<br>35 W. Wacker Drive<br>Chicago, IL 60601-9703<br>T: (312) 558-5600<br>F: (312) 558-5700<br>Email: dmcguire@winston.com<br><br>*Counsel for Debtors and Debtors in Possession* |

**Certificate of Service**

  I certify that on April 25, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

               */s/ Katherine A. Preston*
               Katherine A. Preston