**EXHIBIT 1
TO
ORDER APPROVING MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR
ENTRY OF AN ORDER APPROVING COMPROMISE AND AGREEMENT**

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is hereby entered into by and between the Official Unsecured Creditors Committee (the "Committee") of the bankruptcy estates of The Pill Club Pharmacy Holdings, LLC and related entities (collectively, "Debtors")[1], and the California Department of Justice ("DOJ"), the California Department of Insurance ("CDI"), and the California Department of Health Care Services ("DHCS"). DOJ, CDI, DHCS, and the State of California are collectively referred to as the "State." The parties to this Agreement are individually referred to as "Party" and collectively referred to as "Parties."

## RECITALS

A. On or about March 28, 2019, Happy Baumann and Cindy Swintelski ("Relators") filed a qui tam action naming The Pill Club Medical Group, Inc., The Pill Club Holdings, Inc., MobiMeds, Inc., David Svec, M.D., Inc., Roy Nicolas "Nick" Chang, Sajad Zalzala, M.D., Milagros "Mili" Pinon, and Sandy Wang as defendants in the Sacramento County Superior Court matter captioned *The State of California ex rel. Happy Baumann and Cindy Swintelski v. The Pill Club Medical Group, Inc*., et al., Case No. 34-2019-00253324, under the qui tam provisions of the California False Claims Act, California Government Code section 12651 et seq., and the California Insurance Frauds Prevention Act, California Insurance Code section 1871.7 (the "Qui Tam Action"). As part of their investigation of the claims alleged in the Qui Tam Action, DOJ and CDI identified additional defendants, including The Pill Club Pharmacy Holdings, Inc., MedPro Pharmacy, LLC, Hey Favor, Inc., and FVR Medical Group, Inc. (collectively with the named defendants above, "Qui Tam Defendants"). Before DOJ and CDI's respective deadlines to file complaints in intervention, DOJ and the Qui Tam Defendants agreed to mediate the Qui Tam Action. CDI and the Qui Tam Defendants also entered into separate settlement negotiations.

B. On January 18, 2023, DOJ and CDI entered into two separate settlement agreements (the "Qui Tam Settlement Agreements") with Qui Tam Defendants. Under the Qui Tam Settlement Agreements, the Qui Tam Defendants were required to make two lump-sum payments, one to DOJ for $15 million and one to CDI for $3.275 million (the "Qui Tam Settlement Amounts").

C. On January 19, 2023, Qui Tam Defendants paid the Qui Tam Settlement Amounts in full by wire transfer. Under applicable law, both DOJ and CDI transferred a portion of their respective shares of the Qui Tam Settlement Amounts to others. Of the DOJ share of the Qui Tam Settlement Amounts, DOJ transferred $3.6 million to Relators pursuant to California Government Code section 12652(g), $2.97 million to DOJ's False Claims Fund pursuant to California Government Code section 12652(g)(1)(A), and the remaining $8.43 million to DHCS

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Hey Favor, Inc. (3206), The Pill Club Pharmacy Holdings, LLC (0112), MedPro Pharmacy, LLC (1138), MobiMeds, Inc. (3165), FVR Medical Group, Inc. (6320), FVR Medical Group of New Jersey, PC (2934), FVR Medical Group of Kansas, PA (5449), and FVR Medical Group of Texas, PA (6479).

1

pursuant to Section 1905(q)(5) of the Social Security Act (codified at 42 U.S.C. § 1396b(q)(5)). Of the CDI share of the Qui Tam Settlement Amounts, CDI transferred $1,008,929.90 to Relators pursuant to California Insurance Code section 1871.7(g)(1)(A), with the remaining amount ($2,266,070.10) allocated to CDI and the State of California General Fund.

D. On April 18, 2023, 89 days after Qui Tam Defendants paid the Qui Tam Settlement Amounts, Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Lead Case No. 23-41090.

E. On May 4, 2023, the Office of the United States Trustee filed its *Appointment of the Official Unsecured Creditors Committee*, which appointed Veru Inc., Mayne Pharma Commercial LLC, (f/k/a Mayne Pharma Inc.), and McKesson Corporation as the Official Committee of Unsecured Creditors in the Debtors' bankruptcy cases. The Office of the United States Trustee later filed an *Amended Appointment of the Official Unsecured Creditors Committee*, appointing only Veru and McKesson.

F. On September 13, 2023, the court entered its *Order Approving Stipulation to Authorize the Official Committee of Unsecured Creditors to Prosecute Certain Avoidance Actions with Modifications*, which granted the Committee standing to prosecute, on behalf of the Debtors' estates, avoidance actions against various transferees, including the recipients of the alleged preferential transfers of the Qui Tam Settlement Amounts.

G. On December 1, 2023, the Committee filed a complaint, originally naming the State of California as the sole defendant, alleging two causes of action for avoidance of a preferential transfer and recovery of property, seeking to avoid the transfer of the Qui Tam Settlement Amounts. On December 8, 2023, the Committee filed an Amended Complaint, substituting the State of California with DOJ and CDI as defendants, alleging the same two causes of action for avoidance of a preferential transfer and recovery of property (the "Complaint").

H. DOJ and CDI assert several defenses to the Complaint. First, DOJ and CDI contend that the sovereign immunity of DOJ and CDI prevents the Bankruptcy Court from exercising subject matter jurisdiction over the claims alleged in the Complaint. Second, DOJ and CDI contend that the Qui Tam Defendants were not insolvent on the date of the alleged preferential transfer of the Qui Tam Settlement Amounts. Finally, DOJ and CDI assert that they were only initial transferees of a portion of the Qui Tam Settlement Amounts.

I. The Committee contests the defenses raised by DOJ and CDI, and believes that the transfers set forth in the Complaint (the "Transfers") are avoidable in their entirety. First, the Committee contends that both Section 106(a) of the Bankruptcy Code and the Supreme Court's decision in *Central Virginia Community College v. Katz* express a clear intent to abrogate the sovereign immunity of federal, state, local and foreign governmental units with respect to

sections 547, 550 and 551 of the Bankruptcy Code.  Second, the Committee contends that the Debtors, through the Committee, have produced ample evidence that the Qui Tam Defendants were insolvent on the date of the Transfers.  Finally, the Committee contends that the DOJ and CDI were initial transferees with respect to the entirety of the Transfers.

J.	To avoid uncertainty and costly litigation, the Parties agreed to attend mediation. As a transferee of $8.43 million of the Qui Tam Settlement Amounts, DHCS also agreed to attend mediation. On March 26, 2024, the Parties attended mediation before the Hon. Harlin Hale (Ret.), which resulted in the Parties reaching a settlement in principle.

NOW THEREFORE, for good and valuable consideration, including the mutual promises recited herein, and subject to Bankruptcy Court approval, the Parties agree as follows:

1.	<u>Recitals</u>. The recitals to this Agreement are incorporated into and made a part of this Agreement.

2.	<u>Effective Date</u>. This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date"). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

3.	<u>Conditions</u>. Except for the requirements set forth in this paragraph, the Agreement and all payments, dismissals, and releases contained herein are expressly conditioned upon the entry of an order by the Bankruptcy Court granting a motion to approve the Agreement pursuant to Fed. R. Bankr. P. 9019 ("Compromise Motion"). The Debtors shall be responsible for filing the Compromise Motion within fifteen (15) calendar days of the Effective Date of the Agreement. If the fifteenth (15th) calendar day is a Saturday, the Debtors shall file the Compromise Motion the Friday before. If the fifteenth (15th) calendar day is a Sunday, the Debtors may file the Compromise Motion the following Monday.

4.	<u>Settlement Amount</u>. In full satisfaction of all claims by the Committee and Debtors, DOJ, CDI and DHCS shall make payments to Debtors in the following amounts:

   a. DOJ shall pay the sum of $2,173,265.60;
   b. DHCS shall pay the sum of $6,168,561.95; and
   c. CDI shall pay the sum of $1,658,172.45.

The aggregate amount of these payments totals $10,000,000.00 (the "Settlement Amount"). However, DOJ, DHCS, and CDI are individually liable only for their respective share of the Settlement Amount as set forth above in this paragraph and are not jointly liable for the payments owed by the other entities or the entire Settlement Amount. The Settlement Amount shall be made payable to Hey Favor, Inc. ("Payee") and sent by mail to Winston & Strawn, c/o Dan McGuire, 35 W. Wacker Dr., Chicago, IL 60601-6154. The Payee shall execute all necessary State of California forms including but not limited to Form STD 204 ("Payee Data Record"), if necessary, prior to receiving any payment under this Agreement.

3

5. <u>Timing of Settlement Amount Payment</u>. The DOJ and CDI shall pay their respective shares of the Settlement Amount on or before July 31, 2024, or, in the event the Budget Act or amended Budget Act that includes the appropriation to pay the Settlement Amount is enacted after June 30, 2024, payment shall be due 30 days after the budget bill including the appropriation to pay the Settlement Amount is enacted, whichever is later. DHCS shall pay its share of the Settlement Amount on or before August 30, 2024, or, in the event the Budget Act or amended Budget Act that includes the appropriation to pay the Settlement Amount is enacted after July 31, 2024, payment shall be due 30 days after the budget bill including the appropriation to pay the Settlement Amount is enacted, whichever is later. DOJ, DHCS, and CDI shall each direct the State Controller's Office to issue payment for each of their respective shares of the Settlement Amount in accordance with the payee identified by the Committee in the Payee Data Record.

6. <u>Section 502(h) Proof of Claim</u>. Within 30 days following transmittal of payment by DHCS to Debtors, DHCS may file an allowed unsecured proof of claim in the amount of $6,168,561.95, pursuant to 11 U.S.C. § 502(h). DHCS's general unsecured proof of claim shall be an allowed claim in the bankruptcy case of Hey Favor, Inc. DOJ and CDI waive any right to file a proof of claim under 11 U.S.C.§ 502(h).

7. <u>Committee Release</u>. Excepting only the rights and obligations created by this Agreement, and in consideration of the provisions of this Agreement, the Committee on behalf of Debtors and their respective bankruptcy estates, hereby fully releases, acquits, and forever discharges the State and all of its/their related agencies, departments and entities, officers, directors, employees, representatives, attorneys, predecessors, and successors, individually, and collectively, from any and all actions, causes of action, obligations, costs, expenses, attorney fees, damages, losses, claims, debts, liabilities and demands of any character, nature and kind, known or unknown, suspected or unsuspected, filed or unfiled, including but not limited to all claims that have been asserted or could be asserted in connection with the Complaint.

8. <u>Dismissal of Complaint</u>. Within fifteen (15) calendar days after receipt of each of DOJ, DHCS and CDI's respective shares of the Settlement Amount, the Committee shall dismiss the Complaint in its entirety, with prejudice. If the fifteenth (15th) calendar day is a Saturday, the Committee shall dismiss the Complaint the Friday before. If the fifteenth (15th) calendar day is a Sunday, the Committee may dismiss the Complaint the following Monday.

9. <u>Entire Agreement</u>. The provisions of this Agreement constitute the entire agreement between the Parties and supersede all prior negotiations, proposals, agreements and understandings regarding the subject matter of this Agreement.

10. <u>Further Acts</u>. The Parties agree to perform such further acts and to execute and deliver such further documents as may be reasonably necessary or appropriate to carry out the intent or provisions of this Agreement.

11. Successors. This Agreement shall bind and inure to the benefit of the successors of the Parties.

12. Mutual Preparation. The Parties further agree that this Agreement is the product of their mutual preparation and accordingly, shall not be deemed to have been prepared or drafted by either party. The Parties further agree that any court or tribunal seeking to interpret this Agreement should construe it as the product of mutual preparation. .

13. Governing Law: This Agreement shall be construed in accordance with and governed by the law of the State of California, without giving effect to the conflict of law principles thereof.

14. Counterparts. This Agreement may be signed by the Parties in multiple counterparts, all of which shall be taken together as a single document. A facsimile or email signature constitutes an original and all evidentiary objections to same other than for authenticity of signature are waived.

15. No Admission. It is expressly understood and agreed that this Agreement is entered solely for the purpose of avoiding the expense and inconvenience of further litigation and that this Agreement is not to be construed as an admission by any of the Parties of any liability whatsoever.

16. Modification. No modification of this Agreement shall be valid unless agreed to in writing by the Parties.

17. Knowledge and Authority. Each of the Parties hereto warrants and represents that it has (a) voluntarily and knowingly made this Agreement, (b) read this Agreement and understands all of its terms, (c) the authority to make this Agreement, and (d) has made this Agreement, with full knowledge of its significance, without relying upon any warranties or representations, except those set forth herein, by any of the other Parties or their attorneys. Each person who signs this Agreement represents and warrants that he or she has the authority and capacity to act on behalf of the party for whom they are signing and to bind the party and all who might claim through it to the terms of this Agreement.

18. Disclosure to the Public. All Parties consent to the State's disclosure of this Agreement, and information about this Agreement, to the public.

19. Fees and Expenses. The Parties shall bear their own attorney fees and expenses incurred with respect to the matters that are the subject matter hereof including, without limitation, negotiation and implementation of this Agreement.

20. Integration. The Parties agree that this Agreement constitutes the sole, entire, and complete agreement to resolve their disputes in the above-captioned complaint. The Parties agree that no promise, inducement, representation, or agreement not expressed in this Agreement

5

has been made, and the terms of this Agreement are contractual and not a mere recital. No amendment to this Agreement or any other agreement among the Parties affecting this Agreement shall be effective unless it is in writing and signed by all parties to this Agreement.

21. Severability. If any of the terms of this Agreement are found to be invalid, illegal, or unenforceable in any respect, the remaining provisions shall nevertheless be binding with the same effect as if the invalid, illegal, or unenforceable term or terms were originally deleted. Neither this Agreement nor any provision set forth in it may be amended, canceled, revoked, waived, discharged, terminated, or otherwise modified except by a signed written agreement subscribed and executed by the party against whom enforcement of any change, waiver, modification, or discharge is sought.

Dated: May ____, 2024        OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By:_____

Phil Greenberg for Veru, Inc., Committee Chairman

Dated: May ___, 2024        CALIFORNIA DEPARTMENT OF JUSTICE

By:_____

Nicolas N. Paul, Senior Assistant Attorney General, Division of Medi-Cal Fraud and Elder Abuse, Civil Section

Dated: May ___, 2024        CALIFORNIA DEPARTMENT OF INSURANCE

By:_____

Heather Brae Hoesterey, Deputy General Counsel for Litigation

Dated: May ___, 2024        CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES

By:_____

Michelle Baass, Director