# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 23-41090 (ELM) |
| **THE PILL CLUB PHARMACY** | ) |
| **HOLDINGS, LLC,** *et al.,*[1] | ) (Jointly Administered) |
| | ) |
| Debtors. | ) |
| | ) |

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "Agreement" or Liquidating Trust Agreement"), is made effective as of the Effective Date of the Plan (as the term Effective Date is defined in the Plan), by and among (i) The Pill Club Pharmacy Holdings, LLC and its affiliates (the "Pill Club"), as debtor and debtor in possession (the "Debtors") in the above-captioned chapter 11 case (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), (ii) the Official Committee of Unsecured Creditors of the Pill Club (the "Committee"), and (iii) Mark Shapiro, as the trustee (the "Trustee") for the Beneficiaries (as defined below).

## RECITALS

A.     On April 18, 2023, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court.

B.     On January 25, 2024, the Debtors filed Modified Chapter 11 Plan (Docket No. 568). On _____, 2024, the Bankruptcy Court entered an order (Docket. No. \_\_\_\_\_) (the "Confirmation Order") confirming the *Joint Chapter 11 Plan of Liquidation for Debtor Hey Favor, Inc., the Pill Club Pharmacy Holdings, LLC, MedPro Pharmacy, LLC, MobiMeds, Inc., FVR Medical Group, Inc., FVR Medical Group of New Jersey, PC, FVR Medical Group of Kansas, PA, and FVR Medical Group of Texas, PA* (Docket. No. _____).

C.     This Trust (as defined below) is established pursuant to the Plan as a liquidating trust in accordance with Treasury Regulation Section 301.7701-4(d) for the sole purpose of liquidating the Liquidating Trust Assets (as defined below), with no objective to continue or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Hey Favor, Inc. (3206), The Pill Club Pharmacy Holdings, LLC (0112), MedPro Pharmacy, LLC (1138), MobiMeds, Inc. (3165), FVR Medical Group, Inc. (6320), FVR Medical Group of New Jersey, PC (2934), FVR Medical Group of Kansas, PA (5449), and FVR Medical Group of Texas, PA (6479). The service address for the Debtors is: 411 Borel Avenue, San Mateo, CA 94402.

1

engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of this Trust.

D.    Capitalized terms used in this Agreement and not defined herein have the meanings ascribed to them in the Plan, or if not defined in the Plan, the meanings ascribed to them in the Bankruptcy Code.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and in the Plan, the Debtors, the Trustee and the Committee agree as follows:

**ARTICLE I**
**DEFINITIONS**

1.01    Definitions.

"Avoidance Actions" means all rights to avoid transfers or distributions and recover any such avoided transfers or distributions for the benefit of the Estate under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preferential transfers, fraudulent conveyances, fraudulent transfers, voidable transfers, and/or other similar avoidance claims, rights, and causes of action, whether or not demand has been made or litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions; *provided, however,* that Avoidance Actions does not include any claims or Causes of Action waived by the Debtors pursuant to the Avoidance Action Stipulation.

"Beneficiaries" or "Beneficial Interests" means holders of or beneficial interests in Liquidating Trust Units.

"Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. "Causes of Action" also include: (a) all rights of setoff, counterclaim, or recoupment; claims under contract, including, but not limited to: (i) payment of a specific sum of money, (ii) adjustment or interpretation of contract terms, and/or (iii) other relief arising under or relating to the contract; claims to damages, including, but not limited to: (i) consequential damages, (ii) punitive damages, (iii) nominal damages, and/or (iv) litigation costs; claims for the breach of any fiduciary duty including, but not limited to those imposed by common law, and/or allowed under tort law, including, but not limited to the duty of: (i) loyalty, (ii) good faith and fair dealing, (iii) confidentiality, (iv) disclosure, (v) care, (vi) impartiality, (vii) tortious interference, and (viii) aiding and abetting the breach of a fiduciary duty; equitable claims, including, but not limited to: (i) specific performance, (ii) reformation, (iii) restitution, (iv) injunction, (v) subrogation, (vi) impossibility of performance, (vii) tracing, (viii) constructive trust and resulting trust, and (ix) declaratory relief; state fraudulent transfer claims, in any state where Debtors operated; and all rights and defenses under common law, including but not limited to: (i) fraud, (ii) mistake, (iii) duress, and (iv) usury; (b) the right to object to or otherwise

77434091;1

contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code."

"Claim" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

"Confidential Party" and "Confidential Parties" shall have the meaning ascribed in Section 10.11, *infra.*

"Disputed" means, as to a Claim or an Interest, a Claim or an Interest: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

"Disputed Claim" means any Claim that is or hereafter may be listed on the Schedules as disputed, contingent, or unliquidated, or which is objected to in whole or in part prior to the Claims Objection Deadline and has not been Allowed in whole or in part by settlement or Final Order or compromised, settled, or otherwise resolved pursuant to the authority granted to the Trustee under the Plan and the Liquidating Trust Agreement.

"Disputed Claims Reserve" means the reserve established by the Trustee for the benefit of Holders of Disputed Claims. Any such reserve shall be made from the Liquidating Trust Assets and shall consist of the amounts payable to Holder(s) of Disputed Claim(s), which amounts shall be funded at the time of any Distributions, subject to available funds.

"Distribution" means any distribution to Holders of Allowed Claims, Liquidating Trust Beneficiaries, or their permitted designee(s) or assignee(s) under or pursuant to the Plan or the Liquidating Trust Agreement.

"Distribution Record Date" means the record date for purposes of making Distributions under the Plan on account of Allowed Claims, which date shall be the Effective Date.

"General Unsecured Claim" means any Claim other than an Other Priority Claim, a Prepetition Lender Claim that is a Secured Claim, or a Section 510(b) Claim..

"Holder" means the legal or beneficial holder of any Claim or Equity Interest.

"Liquidating Trust Advisors" means any firm(s) or individual(s) retained by a Trustee to serve as a legal counsel or provide other professional services in connection with the performance of the Trustee's duties and responsibilities under this Plan and a Liquidating Trust Agreement.

"Liquidating Trust Assets" means (i) the Liquidating Trust Causes of Action, and (ii) all other Assets of the Debtors and their Estates as of the Effective Date, excluding Assets previously distributed and not otherwise subject to recovery.

"Liquidating Trust Causes of Action" means all Causes of Action held or owned by the Debtors' Estates immediately prior to the Effective Date (whether asserted directly or derivatively) against all parties; *provided* that the Liquidating Trust Causes of Action exclude (i) any Claims or Causes of Action released or exculpated as provided in the Plan. The Liquidating Trust Causes of Action shall include all Causes of Action.

"Liquidating Trust Operating Expenses" means the overhead and other operational expenses of the Liquidating Trust, including, but not limited to, (i) reasonable compensation for the Trustee in accordance with the Liquidating Trust Agreement, (ii) costs and expenses incurred by the Trustee in administering the Liquidating Trust, (iii) Statutory Fees that may become payable by the Liquidating Trust after the Effective Date to the U.S. Trustee, and (iv) any fees and expenses payable to the Liquidating Trust Advisors.

"Liquidating Trust Recoveries" means the recoveries from the Liquidating Trust on account of any proceeds from the liquidation of any Liquidating Trust Assets.

"Liquidating Trust Units" means beneficial interests in the Liquidating Trust entitling each Holder thereof to receive its Pro Rata Share of Distributions of Liquidating Trust Recoveries.

"Professional Fee Claim" means a Claim under sections 328, 330(a), 331, or 503 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Bankruptcy Case.

"Pro Rata Share" means, with respect to any Distribution on account of any Allowed Claim, a percentage represented by a fraction (i) the numerator of which shall be an amount equal to such Claim and (ii) the denominator of which shall be an amount equal to the aggregate amount of Allowed Claims in the same Class as such Claim, provided that in cases where Pro Rata Share is used in reference to series of Liquidating Trust Units distributed to multiple series or Classes, Pro Rata Share means the portion that such Holder's Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such series or Class entitled to Distributions as of the date of such Distribution.

"Trust Advisory Board" means the board to be appointed in accordance with, and to exercise the duties set forth in, this Liquidating Trust Agreement, which duties shall be in the nature of overseeing the actions of the Trustee pertaining to the administration of the Liquidating Trust, including the removal of the Trustee.

## ARTICLE II
## PURPOSE OF THE TRUST

2.01    Purpose. The Trust shall be established for the sole purpose of liquidating the Liquidating Trust Assets, in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of any trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Trust. The Liquidating Trust is established for the purpose of, among other things, (i) investigating and, if appropriate, pursuing the Liquidating Trust Causes of Action, (ii) administering, monetizing and liquidating the Liquidating Trust Assets, (iii) resolving all Disputed Claims, if appropriate, and (iv) making all Distributions from the Liquidating Trust as provided for in the Plan and this Agreement.

4

2.02    <u>Relationship</u>. This Agreement is intended to create a trust and a trust relationship to be governed and construed in all respects as a liquidating trust. The relationship of the Beneficiaries to the Trustee shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and Beneficiaries' rights shall be limited to those conferred upon them by this Agreement.

**ARTICLE III**
**ESTABLISHMENT OF THE TRUST**

3.01    <u>Name of the Trust</u>. The name of the Trust shall be the  Pill Club Liquidating Trust (referred to herein as the "<u>Trust</u>").

3.02    <u>Incorporation of Plan</u>. The Plan and Confirmation Order are each hereby incorporated into this Agreement and made a part hereof by this reference, to the extent applicable; *provided, however,* to the extent that there is conflict between the provisions of this Agreement, the provisions of the Plan, and/or the Confirmation Order, each such document shall have controlling effect in the following order: (1) the Confirmation Order, (2) the Plan, and (3) this Agreement.  All rights and powers of the Liquidating Trust and Liquidating Trustee set forth in the Plan and Confirmation Order are expressly incorporated by reference herein.

3.03    <u>Transfer of Property of the Estate to the Trust</u>. Except as otherwise provided by the Plan or this Agreement, on the Effective Date, pursuant to section 1141(b) of the Bankruptcy Code, the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Claims, Liens, charges or other encumbrances, on the condition that the Trustee comply with the terms of the Plan, including the making of all payments and distributions to Creditors provided for in the Plan. The Trust hereby expressly accepts the transfer to the Trust of the Liquidating Trust Assets and any other transfers contemplated by the Plan in the time and manner as, and subject to the terms, contemplated in the Plan. The Debtors shall execute and deliver such documents to the Trust as the Trustee reasonably requests to transfer and assign the Liquidating Trust Assets to the Trust.

3.04    <u>Title to the Liquidating Trust Assets</u>. The Trustee shall hold title to the Liquidating Trust Assets for the benefit of the Beneficiaries, subject to the terms of the Plan and this Agreement. All Liquidating Trust Assets held by the Liquidating Trust on the Effective Date (except for those assets attributable to the Disputed Claims Reserve) shall be deemed for federal income tax purposes to have been distributed by the Debtors on a Pro Rata share basis to those Holders of Allowed Claims that are entitled to receive Distributions from the Liquidating Trust, and then contributed by such Holders to the Liquidating Trust in exchange for their Beneficial Interests. All Holders of Claims have agreed or shall be deemed to have agreed to use the valuation of the Assets transferred to the Liquidating Trust as established by the Trustee for all federal income tax purposes. The Beneficiaries under the Liquidating Trust will be treated as the grantors and deemed owners of the Liquidating Trust. The Liquidating Trust will be responsible for filing information on behalf of the Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a). Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Estate of an undivided interest in each of the Liquidating Trust Assets ((i) to the extent of the value of their respective share in the applicable assets and (ii) except for those assets attributable to the Disputed Claims Reserve) and then

contributed such interests to the Liquidating Trust, and the Liquidating Trust's Beneficiaries will be treated as the grantors and owners thereof.

3.05    <u>Appointment of the Trustee</u>. Pursuant to the Plan, Mark Shapiro has been designated to serve as the Trustee, and he accepts such appointment and agrees to serve in such capacity, as of the Effective Date. The Trustee shall be deemed to be appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

3.06    <u>Rights of Debtors</u>. On the Effective Date, the Trustee shall succeed to and be vested with all of the Debtors' rights, title and interest in the Liquidating Trust Assets, but subject to the terms of the Plan and this Agreement, and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets or this Trust, and the Trustee shall be vested with all rights and discretion regarding the Liquidating Trust Assets. In no event shall any part of Liquidating Trust Assets revert to or be distributed to the Debtors or the holders of the Debtors' Equity Interests. Additionally, the Trustee shall succeed to and be vested with all rights and legal privileges of the Debtors and their Estates, specifically including, but not limited to, the attorney-client privilege and work product privileges. After the Effective Date, the Trustee shall control all applicable legal privileges of the Debtor and their Estates, including control over whether to assert or waive attorney-client privilege for matters arising from or relating to transactions or activity occurring prior to the Effective Date.

3.07    <u>Nontransferability of Beneficial Interests</u>. Any and all Beneficial Interests shall be nontransferable except (i) upon death of the Holder, (ii) by operation of law, or (iii) to an affiliate of the Holder. Beneficiaries shall have no voting rights with respect to such Beneficial Interests.

3.08    <u>Beneficial Interests are Beneficial Only</u>. The ownership of Beneficial Interests shall not entitle any holder thereof to any title in or to the Liquidating Trust Assets as such (which title shall be vested in the Trustee) or to any right to call for a partition or division of the assets of the Trust or to require an accounting.

3.09    <u>Conflicting Claims to Beneficial Interests</u>. If any dispute arises with respect to the ownership or control of Beneficial Interests or any holder thereof or the right to receive any distribution in respect thereof, or if there is any disagreement among persons claiming to be permitted successors of any Beneficial Interest resulting in adverse claims or demands being made in connection with Beneficial Interests (an "<u>Ownership Dispute</u>"), the Trustee shall be entitled to refuse to comply with any demand or direction made by any party to such Ownership Dispute. In so refusing, the Trustee may elect to make no payment or distribution with respect to the Beneficial Interests relating to the Ownership Dispute or any part thereof, or to make payment or distribution in escrow as provided below, and to refer such Ownership Dispute to the Bankruptcy Court or another court of competent jurisdiction, which shall have jurisdiction over resolution of such Ownership Dispute. In so doing, the Trustee shall not be or become liable to any of such parties for its refusal to comply with any demand or direction made by them, nor shall the Trustee be liable for interest or any other charges on any funds which it may so withhold. The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a final judgment, or (ii) all differences have been resolved by a valid written agreement among all of such parties and the Trustee, which agreement shall include a complete release of the Trustee and his respective professionals. With respect to any payment or distribution to be made, the

77434091;1

Trustee may make such payment or distribution into an escrow account until disposition thereof shall be determined by court order or by written agreement among the interested parties to such dispute; *provided, however,* that after providing interested parties at least 30 days' notice, if no action has been commenced within 90 days after the relevant distribution date, the property which is the subject of the dispute shall irrevocably become Unclaimed Distributions.

## ARTICLE IV
## THE TRUSTEE

4.01    <u>Authority of the Trustee</u>. Subject to Article V of this Agreement, the Trustee is hereby empowered to, subject to the limitations set forth in this Agreement, take any and all actions to effectuate the operations, completion, and purpose of the Trust. Without limiting the generality of the previous sentence, the Trustee shall have the power to, for the benefit of the Beneficiaries without approval of the Bankruptcy Court:

(i)      except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors;

(ii)      make Distributions to holders of Allowed Claims in accordance with the Plan;

(iii)      exercise its reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandoning of the remaining assets of the Debtors under the Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims;

(iv)      Prosecute all Causes of Action on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Liquidating Trustee may determine is in the best interests of the Debtors;

(v)      make payments to existing professionals who will continue to perform in their current capacities; retain professionals to assist in performing its duties under the Plan;

(vi)      maintain the books and records and accounts of the Debtors;

(vii)     retain professionals to assist in performing its duties under the Plan;

(viii)    invest Cash of the Debtors, including any Liquidation Proceeds, including any Causes of Action, and any income earned thereon;

(ix)      incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Liquidating Trustee;

(x)      administer each Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such

7

Debtor ending after the Petition Date through the liquidation of such Debtor as determined under applicable tax laws and (iii) representing the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xi)     prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required hereunder, by any Governmental Unit or applicable law;

(xii)     determine whether to create a liquidating trust for the assets of a Debtor and which assets to transfer to such liquidating trust;

(xiii)     perform other duties and functions that are consistent with the implementation of the Plan.

4.02     Limitations on Trustee's Authority.

(i)     The Trustee, as his or her primary purpose, is not authorized to engage in any trade or business with respect to the Liquidating Trust Assets, but shall engage only in activity reasonably necessary to, and consistent with, the liquidating purpose of the Trust. All actions taken by the Trustee shall be consistent with the expeditious but orderly liquidation of the Liquidating Trust Assets as is required by applicable law and consistent with the treatment of the Trust as a liquidating trust under Treasury Regulation Section 301.7701-4(d).

(ii)     The Trustee shall liquate and convert to Cash the Liquidating Trust Assets in an expeditious but orderly manner, make timely Distributions, and not unduly prolong the duration of the Trust.

(iii)     Any investments of the Cash portion of the Liquidating Trust Assets by the Trustee must be permitted investments for a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), or under applicable Internal Revenue Service guidelines, rulings, or other controlling authority.

4.03     <u>Discretion</u>. Subject to Article V of this Agreement, the Trustee shall have absolute discretion to pursue, or not pursue, any and all claims, rights, or causes of action, as he or she determines is in the best interests of the Beneficiaries and consistent with the purposes of the Trust, and shall have no liability for the outcome of its decisions, except as set forth herein and in the Plan. Except as expressly set forth in the Plan and Article V of this Agreement, and subject to his or her duties and obligations, the Trustee, on behalf of the Trust, shall have absolute discretion in the administration of the Trust and Liquidating Trust Assets. The Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidating Trust Assets to Cash.

4.04     <u>Retention of Professionals</u>. The Trustee may retain and compensate attorneys and other professionals (including any professional who represented a party in interest in the Bankruptcy Case) to assist in his or her duties as the Trustee on such terms as the Trustee deems appropriate. The Trustee shall be entitled to rely, in good faith, on the advice of his or her or the Trust's, as applicable, retained professionals. Accordingly, the Trustee, on behalf of the Liquidating Trust, may employ, without further order of the Bankruptcy Court, any Liquidating Trust Advisors to

assist in carrying out the Trustee's duties under the Plan, Plan Confirmation Order, and this Agreement and may compensate and reimburse the reasonable expenses of the Liquidating Trust Advisors from the Liquidating Trust Assets in accordance with the Plan and this Agreement without further Order of the Bankruptcy Court.

4.05    Liability of Trustee and Trust Representatives. Neither the Trustee, nor the employees, professionals, agents, and representatives of the Trust or the Trustee, nor members of the Trust Advisory Board, defined in Article V of this Agreement (collectively the "Covered Persons"), shall be held liable for actions taken or omitted in his, her, its or their capacity as, or on behalf of, the Trust or Trustee, except those acts arising out of his, her, its or their bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, self-dealing, or, in the case of an attorney or other professional, malpractice, and each shall be entitled to indemnification and reimbursement from the Trust for fees and expenses in defending any and all of its actions or inactions in his, her, its or their capacity as, or on behalf of, the Trust or Trustee. All Persons dealing with the Trustee shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the Trustee in carrying out the terms of this Agreement, and, subject to the preceding portions of this section, none of the Covered Persons shall have any personal obligation to satisfy any such liability.

4.06    Compensation of the Trustee and Other Employees or Agents. The Trustee and the Trust's employees and agents shall be entitled to receive reasonable compensation paid by the Trust with the Liquidating Trust Assets. The Trustee shall be compensated at his or her normal hourly rate, plus the reimbursement of actual and necessary out of pocket expenses. The Trust may pay such expenses in the ordinary course without application or notice to the Bankruptcy Court or any other court. For the avoidance of doubt, the Trustee may, in his or her reasonable discretion, pay the costs and expenses of the Trust, Trustee, or any Trust professional, employee or agent before approving or making any Distributions to the Beneficiaries.

4.07    Exculpation; Indemnification. All of the Covered Persons shall be, and hereby are, exculpated by all Persons, including the Beneficiaries, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon them by the Plan, this Agreement, or any Order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, or by applicable law, except for actions or omissions that are determined by a Final Order to have arisen out of his, her, its, or their own bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, self-dealing, or in the case of an attorney or other professional (and as required by any applicable rules of conduct), malpractice. No Person shall have, or be permitted to pursue, any claim or cause of action against any of the Covered Persons for making payments in accordance with the Plan, or for implementing any other provision of the Plan. To the fullest extent permitted by applicable law, the Trust shall (i) indemnify, defend, and hold harmless the Covered Persons from and against any and all losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Covered Persons may incur or to which the Covered Persons may become subject in connection with any actions or inactions in their capacity as such, except for actions or inactions involving bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, self-dealing, or, in the case of an attorney or other professional (and as required by any applicable rules of conduct), malpractice, and (ii) the Covered Persons shall be entitled to obtain advances from the Trust to cover their reasonable fees and

77434091;1

expenses incurred in defending any such actions or inactions. The foregoing indemnity in respect of any Covered Person shall survive the termination of such Covered Person from the capacity for which they are indemnified. For the avoidance of doubt, the rights to indemnification hereunder are not exclusive of other rights which a person entitled to indemnification may otherwise have at law or in equity, including, but not limited to, common law rights to indemnification or contribution.

4.08    Removal or Replacement of the Trustee.

A.    Termination. The duties, responsibilities and powers of the Trustee shall terminate on the date the Trust is dissolved, *provided* that Sections 4.05-4.07 hereof shall survive such termination and dissolution.

B.    Resignation. The Trustee may resign by giving not less than sixty (60) days prior written notice to the Trust Advisory Board and Bankruptcy Court; *provided, however,* such resignation shall not become effective until the appointment of a successor trustee by the Trust Advisory Board. If a Trustee resigns from its position hereunder, subject to a final accounting, such Trustee shall be entitled to all accrued but unpaid fees, expenses, and other compensation to the extent incurred, arising or relating to events occurring before such resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Trustee.

C.    Removal. The Trustee may be removed by the Bankruptcy Court or unanimous vote of the Trust Advisory Board with or without cause. Any removal of the Trustee shall become effective as of the date specified by the Bankruptcy Court. In the event of the removal of the Trustee, subject to a final accounting, the Trustee shall be entitled to immediate payment of all fees, expenses, and other compensation earned through and including the effective date of such removal, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor trustee.

4.09    Inquiries into the Trustee's Authority. Except as otherwise set forth in this Agreement or the Plan, no Person dealing with the Trust shall be obligated to inquire into the authority of the Trustee in connection with the protection, conservation, or disposition of the Liquidating Trust Assets.

## ARTICLE V
## TRUST ADVISORY BOARD

5.01    Establishment of Trust Advisory Board.

(a)    The Trust Advisory Board shall be comprised of one member, to be selected by the Committee, respectively, and identified on Annex A hereto.

(b)    The sole member of the Trust Advisory Board may designate (i) one or more representatives who shall attend meetings of and participate in other activities of the Trust Advisory Board and (ii) an alternate representative to attend meetings and participate in other activities of the Trust Advisory Board when the representatives designated pursuant to clause (i) above are unavailable.

77434091;1

(c)     Notwithstanding anything in this Section 5.01 or Section 5.02, the Trust Advisory Board shall not take any action which will cause the Liquidating Trust to fail to qualify as a "liquidating trust" for U.S. federal income tax purposes.

(d)     Except as expressly provided herein, the affirmative vote of the sole member of the Trust Advisory Board shall be the act of the Trust Advisory Board with respect to any matter that requires the determination, consent, approval or agreement of such board. The sole member of the Trust Advisory Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. The sole member of the Trust Advisory Board participating in a meeting by this means is deemed to be present in person at the meeting.

(e)     The Trust Advisory Board member and its representative shall be recused from the Trust Advisory Board's deliberations and votes on any matters as to which such member has a conflicting interest. If a Trust Advisory Board member or its representative does not recuse itself from any such matter, the Trust Advisory Board member and its representative may be recused from such matter by the Trustee; provided, however, the Trust Advisory Board member excluded or challenged as conflicted may seek a ruling on such issue from the Bankruptcy Court on an emergency basis, with all business of the Trust affective by such alleged conflict stayed pending adjudication of such dispute by the Bankruptcy Court; *provided, further,* that the determination of the Bankruptcy Court shall be binding on all parties and no appeal may be taken of such decision.

(f)     Any action required or permitted to be taken by the Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Trust Advisory Board as evidenced by one or more written consents describing the action taken, signed by the Trust Advisory Board and filed with the minutes or proceedings of the Trust Advisory Board.

(g)     The authority of the member of the Trust Advisory Board will be effective as of the Effective Date and will remain and continue in full force and effect until the Liquidating Trust is dissolved in accordance with this Agreement. The service of the member of the Trust Advisory Board will be subject to the following:

(i)     the member of the Trust Advisory Board will serve until death or resignation pursuant to clause (ii) below, or removal pursuant to clause (iii) below;

(ii)     the member of the Trust Advisory Board may resign at any time by providing a written notice of resignation to the remaining members of the Trust Advisory Board. Such resignation will be effective when a successor is appointed as provided herein;

(iii)     the member of the Trust Advisory Board may be removed, and in the event of a vacancy in such member's position (whether by removal, death or resignation), a new member shall be appointed, by the unanimous vote of the remaining member of the Trust Advisory Board and the Trustee. The appointment of a successor member of the Trust Advisory Board shall be completed no later than 30 days after the vacancy and must be evidenced by the filing with the

77434091;1

Bankruptcy Court of a notice of appointment, which notice will include the name, address, and telephone number of the successor member of the Trust Advisory Board; and

(iv)     immediately upon appointment of any successor member of the Trust Advisory Board, all rights, powers, duties, authority, and privileges of the predecessor member of the Trust Advisory Board hereunder will be vested in and undertaken by the successor member of the Trust Advisory Board without any further act; *provided, however,* that the successor member of the Trust Advisory Board will not be liable personally for any act or omission of the predecessor member of the Trust Advisory Board.

(h)     The member of the Trust Advisory Board may be reimbursed by the Trustee for his, her, its, or their actual, reasonable out-of-pocket expenses incurred for serving on such board and for reasonable legal fees incurred by the Trust Advisory Board with respect to outside counsel in the same manner and priority as the compensation and expenses of the Trustee under the Trust Agreement, in accordance with a budget approved by the Trust Advisory Board. Except as provided for in this Section 5.01, the members of the Trust Advisory Board shall not be entitled to receive any other form of compensation.

5.02    Approval of the Trust Advisory Board. Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall submit to the Trust Advisory Board for its review and prior approval the following matters (and any other matters that are of material importance to the value of the Liquidating Trust Assets or the amount of Disputed Claims that the Trust Advisory Board may reasonably direct the Trustee to submit for its approval or that expressly require the approval of the Trust Advisory Board pursuant to the terms of this Trust Agreement, the Plan, and the Confirmation Order):

(a)     Any transaction to sell, assign, transfer or abandon any Liquidating Trust Assets (other than claims, rights or Causes of Action) in which the amount of the transaction exceeds $250,000;

(b)     Any decision to settle or otherwise resolve any objections to Disputed Administrative Expense Claims, Disputed Claims, Administrative Expense Claims or Claims against the Debtors in an amount in excess of $250,000;

(c)     Any decision or agreement to discount, compromise settle and/or sell any rights, claims, Causes of Action or litigation in which the amount of the settlement or sale exceeds $250,000;

(d)     Any decision to make or refrain from making any distributions to the holders of Allowed Claims;

(e)     Any decision to retain and/or to terminate the retention of Liquidating Trust Advisors;

(f)     Incurrence of any cost or expense of the Liquidating Trust above $50,000, that is not reflected in an approved budget; *provided, however,* that approval of the Trust Advisory Board shall not be required in the case of any cost or expense authorized by further order of the Bankruptcy Court;

(g)     The reports and budgets described in this Agreement and any changes thereto; and

(h)     Any amendment of this Liquidating Trust Agreement as provided herein.

5.03   <u>Reports</u>.

(a)     The Trustee shall deliver reports the to Trust Advisory Board as soon as practicable, but in no case later than 90 days, after the end of each calendar year, which reports shall specify in reasonable detail: (i) the status of the Liquidating Trust Assets assigned to the Trust; (ii) the fees and expenses of the Trust, the Trustee and the Liquidating Trust Advisors incurred and/or earned during the most recent year; (iii) the aggregate fees and expenses of the Trust, the Trustee and the Liquidating Trust Advisors incurred and/or earned since the date of this Trust Agreement; (iv) the amount of Trust proceeds received by the Liquidating Trust during the most recent year; (v) the aggregate amount of Trust proceeds received by the Trust since the date of this Trust Agreement; (vi) the calculation of the Cash available for distribution for the next distribution date; (vii) the aggregate amount of distributions from the Trust to holders of Allowed Claims since the date of this Trust Agreement; and (viii) such other information as the Trust Advisory Board may reasonably request from time to time. The Trustee shall also timely prepare, file and distribute such additional statements, reports and submissions (A) as may be necessary to cause the Trust and the Trustee to be in compliance with applicable law or (B) as may be otherwise reasonably requested from time to time by the Trust Advisory Board.

(b)     The Trustee shall prepare and submit to the Trust Advisory Board for approval an annual plan and 12-month budget at least 30 days prior to the commencement of each fiscal year of the Trust; *provided, however,* that the first such report shall be submitted no later than 20 days after the Effective Date. Such annual plan and budget shall set forth in reasonable detail: (i) the Trustee's anticipated actions to administer and liquidate the Liquidating Trust Assets; and (ii) the anticipated expenses, including professional fees, associated with conducting the affairs of the Trust and an amount for fees and expenses of the Trust Advisory Board. Such annual plan and budget shall be updated and submitted to the Trust Advisory Board for review and approval on a quarterly basis, and each such quarterly update shall reflect the differences between the anticipated actions described in the original annual report and actual operations of the Liquidating Trust to date. All actions by the Trustee must be consistent with the plan and budget, as updated and approved by the Trust Advisory Board.

(c)     The Trustee shall provide the Trust Advisory Board with such other information as may be reasonably requested by such board from time to time.

(d)     No later than 90 days after the end of each fiscal year, the Trustee shall deliver, or make available by posting on a website or otherwise, to all Liquidating Trust Beneficiaries reports containing the types of information set forth in Section 5.03(a) above, in such form and in such detail as it deems appropriate in consultation with the Liquidating Trust Advisors and the Trust Advisory Board.

5.04   <u>Disputes</u>. To the extent a dispute arises between the Trustee and the Trust Advisory Board concerning the performance of any of the powers, duties, and/or obligations herein, either the Trustee or the Trust Advisory Board may file a motion and/or other pleadings with the Bankruptcy

Court and obtain advice and guidance or such other relief as may be appropriate concerning a resolution of the matter(s) in dispute between the parties. In such event, the Trust Advisory Board shall have the right to engage legal counsel to advise it with respect to the matter(s) in dispute and the reasonable fees and expenses of such legal counsel shall be reimbursed by the Trustee from Cash in the Liquidating Trust, subject to the terms of this Agreement.

## ARTICLE VI
## DISTRIBUTIONS

6.01   <u>Distributions to Beneficiaries</u>. The Trustee shall make Distributions to the Beneficiaries, at such time and in such amounts that the Trustee deems appropriate in its sole discretion. The timing and amount of each Distribution by the Trustee shall be determined by the Trustee and shall be consistent with the terms set forth in the Plan, any applicable order of the Bankruptcy Court, and this Agreement.

6.02   <u>Priority of Distribution of Liquidating Trust Assets</u>. As explained more fully in Section IV of the Plan, the Plan provides for the creation of a Liquidating Trust. Beneficial Interests in the Liquidating Trust are represented by Liquidating Trust Units as specified in the Plan. Each holder of Liquidating Trust Units shall receive Distributions from the liquidation of the Liquidating Trust Assets.

6.03   <u>Administration of Distributions</u>.

(i)   <u>Manner of Payment</u>. Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or an electronic wire or ACH transfer.

(ii)   <u>Fractional Dollars; <i>De Minimis</i> Distributions</u>. Notwithstanding any other provision of the Plan to the contrary, (a) the Debtors and the Trust shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down; and (b) the Debtors and the Trust shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $25,000, in which case such Distributions shall be deferred to the next Distribution, (ii) if the amount to be distributed to a Holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) if the amount of the final Distribution to such Holder is $50.00 or less. If the Trust or Debtors withhold any Distribution under this provision, the withheld funds shall be treated as Unclaimed Distributions.

(iii)   <u>Unclaimed Distributions</u>. Any Cash or other property to be distributed under the Plan to a Beneficiary shall revert to the Liquidating Trust if it is not claimed by the Beneficiary within three (3) months after the date of such Distribution. If such Cash or other property is not claimed on or before such date, the Distribution made to such Beneficiary shall be deemed to be reduced to zero and such returned, undeliverable, or unclaimed Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall be returned to the Liquidating Trust. All Unclaimed Distributions shall revert to the Liquidating Trust and, thereafter,

14

shall be distributed pursuant to the Plan and Liquidation Trust Agreement, excluding the initial Beneficiary of the Unclaimed Distribution.

(iv)    Set-Off. Except as otherwise provided herein, the Debtors or Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records. Rights of setoff and recoupment, if any, held by any Entity or Person are preserved for the purpose of asserting such rights as a defense to any Claims or Causes of Action or Avoidance Actions of the Debtors, their Estates, or the Trustee and regardless of whether such Entity or Person is the Holder of an Allowed Claim.

(v)    Abandonment. The Trustee may abandon, in any commercially reasonable manner, any property that the Trustee reasonably concludes is of no benefit to the Beneficiaries.

(vi)    Excess Funds. After final Distributions have been made from the Liquidating Trust in accordance with the terms of the Plan and the Liquidating Trust Agreement, if the amount of remaining Cash in the Liquidating Trust is $15,000 or less, the Trustee, may donate such amount to charity; *provided* that the charity shall be unrelated to the Debtors, the Committee and its members, the Trustee, the Liquidating Trust Advisors, and their respective professionals.

(vii)    Maximum Recovery and Postpetition Interest. Except as may be expressly provided herein, interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date. No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

(viii)    Allocation of Distributions Between Principal and Interest. To the extent that any Allowed Claim entitled to a Distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid prepetition interest.

## ARTICLE VII
## SUCCESSOR TRUSTEE

7.01    Successor Trustee. In the event the Trustee is removed, terminated, resigns or is otherwise unable to serve for any reason prior to the dissolution of the Trust, the Trust Advisory Board may designate a successor trustee. Any successor to the initial Trustee shall execute an instrument accepting such appointment and shall file such acceptance with the Trust records and with the Bankruptcy Court. Immediately upon the acceptance of appointment by any successor trustee, all rights, powers, duties, authority, and privileges of the predecessor Trustee will be vested in and undertaken by the successor trustee without any further act; and the successor trustee will not be liable personally for any act or omission of the predecessor Trustee.

## ARTICLE VIII
## DISSOLUTION OF TRUST

8.01   Dissolution of Trust. The Trust shall be dissolved, in accordance with Section 8.02 hereof, no later than the fifth anniversary of the Effective Date, unless the Bankruptcy Court, upon motion by the Trustee or any party in interest, within the three-month period prior to the fifth anniversary (or prior to the end of any extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets. Upon the filing of such a motion, the term of the Trust shall be automatically extended through entry of a Final Order thereon, unless the extension would adversely affect the status of the Trust as a liquidating trust for federal income tax purposes.

8.02   Dissolution Events.   The Trustee shall be discharged, the Trust shall be dissolved, and the Beneficial Interests shall be cancelled at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, (iii) all duties and obligations of the Trustee under the Agreement, the Plan and the Confirmation Order have been fulfilled, (iv) all Distributions required to be made by the Trust under the Plan, the Agreement and the Confirmation Order have been made, and (v) the Bankruptcy Case has been closed. Without limiting any other provision of this Agreement regarding termination, the Trustee or any party in interest may apply to the Bankruptcy Court to terminate this Trust and the Trust may be terminated under such terms and conditions as the Bankruptcy Court may establish.

8.03   Post-Dissolution. The Trustee shall determine whether to retain the books, records, and files of the Debtors and shall retain those books, records, and files that have been created by the Trustee until the date of final Distribution of the Liquidating Trust Assets, after which time the Trustee may destroy such books, records, and files. For purposes of this Section, books and records include computer generated or computer-maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all of the claims and rights of the Debtors in and to its books and records, wherever located.

## ARTICLE IX
## AMENDMENT AND WAIVER

9.01   Amendment Waiver. The Trustee may amend, supplement, or waive any provision of this Agreement, without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court, in order to: (i) cure any ambiguity, omission, defect, or inconsistency in this Agreement; *provided* that such amendments, supplements or waivers shall not adversely affect the Distributions to any of the Beneficiaries or adversely affect the U.S. federal income status of the Trust as a liquidating trust; or (ii) comply with any requirements in connection with the U.S. federal income tax status of the Trust as a liquidating trust. Any substantive provision of this Agreement may be amended or waived by the Trustee, subject to the approval of the Bankruptcy Court; *provided, however,* that no change may be made to this Agreement that would (i) adversely affect (a) the Debtors (absent the Debtors' consent), (b) the Distributions to any of the Beneficiaries

16

(absent the affected Beneficiaries' consent), or (c) the U.S. federal income tax status of the Trust as a liquidating trust or (ii) expand, add to, or modify the original stated purpose of the Trust. Notwithstanding this section, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Trust to liquidate in an expeditious but orderly manner the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d). Notwithstanding any other provision herein, the Trustee may apply to the Bankruptcy Court to order or allow any amendment of this Agreement and the Bankruptcy Court shall have jurisdiction and authority to approve amendments of this Agreement.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

10.01   <u>Intention to Establish Grantor Trust</u>. This Agreement is intended to create a grantor trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with that intent, and, if necessary, this Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

10.02   <u>Laws as to Construction</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to the rules governing the conflict of law which would require the application of the law of another jurisdiction.

10.03   <u>Severability</u>. If any provision of this Agreement or application thereof to any person or circumstance shall be determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

10.04   <u>Jurisdiction</u>. The Bankruptcy Court shall retain exclusive jurisdiction to interpret and enforce this Agreement; *provided, however,* if the Bankruptcy Court is determined to lack the requisite jurisdiction or authority, the United States District Court for the Northern District of Texas shall have exclusive jurisdiction to interpret and enforce the Plan and this Agreement.

10.05   <u>No Substantive Consolidation</u>.  The Liquidation Trust contains the assets of each of the Debtors; however, the assets of each Debtor shall remain segregated, and the liabilities of, and claims against, each Debtor shall be paid from that Debtor's Estate.

10.06   <u>Notices</u>. Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office box, or transmitted by telex, facsimile or other telegraphic means, or sent by a nationally recognized overnight delivery service, addressed to the person for whom such notice is intended at the appropriate address set forth below, or such other address as may be provided to the other parties in writing:

77434091;1

| To the Committee, or the Liquidating Trustee or the Trustee: | The Official Committee of Unsecured Creditors for The Pill Club Pharmacy Holdings, LLC et al.<br>c/o David W. Parham and Esther McKean<br>Akerman LLP<br>2001 Ross Avenue, Suite 3600<br>Dallas, TX 75201 |
| --- | --- |
| | With a copy to: |
| | Caroline Djang<br>Buchalter<br>18400 Von Karman Avenue, Suite 800<br>Irvine, CA 92612 |
| To the Trustee: | Mark Shapiro<br>Senior Managing Director<br>B \| Riley Advisory Services<br>3500 Maple Avenue, Suite 420<br>Dallas, TX 75219 |

10.07   Notices if to a Beneficiary. Subject to any transfer recognized by the Trustee as set forth herein, any notice or other communications hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office box, or transmitted by telex, facsimile or other telegraphic means, or sent by a nationally recognized overnight delivery service, addressed to the person for whom such notice is intended to the name and address set forth in the case of a Beneficiary, on such Beneficiary's proof of claim, or if no proof of claim is filed, the address listed on the Debtors' Schedules or as listed in any other notice filed with the Bankruptcy Court and, if applicable, the Trust or such other means reasonably calculated to appraise the Beneficiary. Any notices to the United States shall be made to the persons and addresses provided for in the Plan.

10.08   Headings. The section headings contained herein are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or any term or provision hereof.

10.09   Entire Agreement. This Agreement contains the entire agreement between the parties and supersedes all prior and contemporaneous agreements or understanding between the parties with respect to the subject matter hereof.

10.10  Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument. A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

10.11  Prevailing Party. If the Trustee or the Trust, as the case may be, is the prevailing party in any dispute with any Beneficiary regarding the provisions of this Agreement or the enforcement thereof, the Trustee or the Trust shall be entitled to collect any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, from the Beneficiary incurred in connection with such dispute or enforcement action. To the extent the Trust has advanced such amounts, the Trust may recover such amounts from the Beneficiary. Any Beneficiary failing to reimburse the Trustee or the Trust for costs compensable under this Section 10.10 within 30 days of the conclusion of the subject action or proceeding shall be deemed to forfeit any Claim against, Beneficial Interest in, or other right to distribution from the Trust and, as soon as practicable thereafter, shall disgorge and return to the Trust any distributions paid to the Beneficiary. Such funds shall be used to reimburse the Trustee or the Trust for such compensable fees and costs, with any excess funds being treated as an Unclaimed Distribution.

10.12  Confidentiality. The Trustee and his or her employees, members, agents, professionals and advisors, including the Liquidating Trust Advisors and each member of the Trust Advisory Board (each a "Confidential Party" and collectively the "Confidential Parties"), shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any Debtor to which any of the Liquidating Trust Assets relates; *provided, however,* that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties; or (b) such disclosure is required of the Confidential Parties pursuant to legal process, including, but not limited to, subpoena or other court order or other applicable laws or regulations. In the event that any Confidential Party is requested to divulge confidential information, such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Trustee and the Trust Advisory Board to allow sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Trustee and the Trust Advisory Board, as applicable, in making any such objection, including, but not limited to, appearing in any judicial or administrative proceeding in support of any objection to such disclosure.

*[Remainder of page intentionally blank. Signature pages follow.]*

     IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first written above.

Dated:_____     TRUSTEE

     Signature:_____

     Name:_____

     As its:_____

Dated:_____     THE DEBTOR (as identified in this Agreement)

     Signature:_____

     Name:_____

     As its:_____

Dated:_____     THE COMMITTEE (as identified in this Agreement)

     Signature:_____

     Name:_____

As its:_____

77434091;1

**Annex A**

<u>Trust Advisory Board</u>

Phil Greenberg, Executive Vice President, Deputy General Counsel, Veru, Inc.

77434091;1

**Annex B**

Trustee's Compensation and Qualifications

Mr. Shapiro joined B. Riley Advisory Services (formerly GlassRatner) in 2016 to help found the firm's Dallas office. He has more than 25 years of strategy, finance and turnaround experience gained from holding corporate management roles and from advising companies in need. Mr. Shapiro's unique combination of corporate financial management and turnaround skills proves valuable to companies executing a turnaround, developing a plan of reorganization or obtaining capital. Additionally, he is one of the leaders of the firm's Due Diligence practice with significant transactional experience helping companies' diligence, execute and integrate corporate transactions. Mr. Shapiro is well regarded for his ability to realize the financial and operational improvements necessary to enhance stakeholder value.

Mr. Shapiro has functioned in executive leadership, interim management and advisory positions for publicly held, privately owned and equity sponsored entities - both domestic and international - with revenues ranging from $15 million to $15 billion. Industries served include healthcare, retail, distribution, commercial and financial services, metals and manufacturing, consumer products and telecommunications.

Mr. Shapiro has restructured and successfully managed companies through a number of transitional, troubled and distressed situations. His methodology melds hands-on strategic planning and implementation with collaborative stakeholder interaction and he is highly skilled at managing, through the cultural changes that affect companies in transition.

Mr. Shapiro has advised on corporate acquisitions and sales of entities with values ranging from $10 million to $1 billion in conjunction with stock offerings, private placements and §363 auctions. He has negotiated cash-flow-based and asset-based lines of credit, managed complex debt re-capitalizations, and secured debtor in possession facilities in addition to real estate and equipment financing.

Mr. Shapiro's hourly rate for serving as the liquidating trustee in this matter is $850 per hour. He anticipates using colleagues in the $400-450 range for this assignment.